**In the Matter of RANDALL CONSTRUCTION, INC., Bankrupt.**

**Charles NEUGER, Trustee, Plaintiff,**

**v.**

**Thomas W. CASGAR, Defendant.**

**Civ. A. No. C79–1906.**

United States District Court,
N. D. Ohio, E. D.

March 10, 1981.

Jeffrey Friedman, Thomas Pavlik, Cleveland, Ohio, for plaintiff.

Neil R. Wilson, Painesville, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

*Introduction*

This case was tried in the Bankruptcy Court upon the Amended Complaint of the Trustee for Randall Construction, Inc., the bankrupt, to recover real property or its value from the defendant, Thomas Casgar. The Trustee sought to set aside the transfer of certain real property, specifically Sublot 7, which allegedly constituted a preferential transfer to the defendant. The Bankruptcy Judge found that the transfer of the subject property was in fact a preferential transfer as defined in the Bankruptcy Act and was void. The defendant has appealed from that judgment.

For the reasons set forth below, the Court hereby affirms the judgment of the Bankruptcy Court.

Bankruptcy Rule 810 provides the applicable standard of review of the Bankruptcy Judge's decision:

> Upon appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses.

Defendant alleges several errors in the Bankruptcy Court's ruling. The Court will address them *seriatim*.

## Reopening the Case

■ After a case has been closed, its reopening is within the sound discretion of the Bankruptcy Court. Denial or grant of such a motion will be overturned by an appellate court only for abuse of discretion.

■■ In this case, the Bankruptcy Court granted a motion by the trustee to reopen the case in order to permit Randall Metheny, President of Randall Construction, Inc., to testify. Defendant Casgar argues that Randall Metheny's absence from the January 22–23, 1979 hearing was due to the plaintiff-trustee's own negligence and, therefore, should not be the basis for permitting him to reopen the case. It is true that where a party has not shown diligence in procuring a witness, the reopening of the case may be denied. See *Reconstruction Finance Corp. v. Commercial Union of America Corp.*, 123 F.Supp. 748 (S.D.N.Y. 1954). However, according to the statement of Randall Metheny submitted with the Motion to Reopen, defendant's attorney is responsible for Metheny's failure to appear in January. Casgar's attorney, in an *ex parte* conversation, told Metheny it really was not necessary for him to attend the hearing. On the basis of that representation, Metheny left town to visit his parents and did not return until after the hearing. In light of this statement, it was not an abuse of discretion for the Bankruptcy Court to reopen the case and hear Metheny's testimony.

## Right to Jury Trial, Bankruptcy Court Jurisdiction

■ It is not necessary to discuss in detail the difference between the "summary jurisdiction" of bankruptcy courts and the "plenary jurisdiction" of district courts sitting either as bankruptcy courts, or as courts of law or in equity. Suffice it to say that if the defendant did *not* waive his objection to summary jurisdiction, the trustee's claim against him to avoid the allegedly preferential transfer must be asserted by independent suit in federal district court under its plenary jurisdiction, with a right to a jury trial. If the objection was waived

by failure to timely urge it, then the trustee's claim may properly be determined by a bankruptcy court's summary jurisdiction.

Defendant Casgar appeals from the denial of his request for a jury trial and the denial of his motion to transfer this case to the district court, under the following circumstances.

The plaintiff-trustee filed this Complaint on August 17, 1978. Defendant filed his Answer on September 7, 1978. That Answer consisted of a general denial of all the allegations of the Complaint and a demand that the case be tried before a jury. Plaintiff subsequently filed an Amended Complaint, and defendant again filed an Answer, which again included a jury demand. On January 16, 1979, defendant filed a Motion to Transfer the case to the district court. The Motion was denied.

On appeal, the defendant contends that the fact that his Answer contained a jury demand constituted timely objection to the summary jurisdiction of the Bankruptcy Court, a jury not being available in summary proceedings.

Rule 915(a) of the Rules of Bankruptcy Procedure provides as follows:

(a) *Waiver of Objection to Jurisdiction.* Except as provided in Rule 112 and subject to Rule 928, a party waives objection to jurisdiction of an adversary proceeding or a contested matter and hereby consents to such jurisdiction if he does not make objection by a timely motion or answer, whichever is first served.

Rule 915(a) is the implementation of the second clause of Section 2(a)(7) of the Bankruptcy Act, 11 U.S.C. § 11(a)(7), which provides:

. . . and where in a controversy arising in a proceeding under this Act an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he

shall be deemed to have consented to such jurisdiction.

[5] Section 2(a)(7) and Bankruptcy Rule 915(a) make clear that an adverse party must affirmatively contest the jurisdiction of the Bankruptcy Court. Defendant's jury demand merely establishes that defendant did not understand the equitable nature of a summary proceeding. Therefore, in light of defendant's failure to make a timely objection, he is deemed to have consented to the Bankruptcy Court's jurisdiction and waived his right to a jury trial.

*Finding of a Preferential Transfer*

■ This Court cannot find as a matter of law that any of the relevant findings of fact by the Bankruptcy Court were clearly erroneous. Having made those findings, the Bankruptcy Court correctly held that a preferential transfer had been made.

The requirements of a preferential transfer, as set forth in § 60(a) of the Bankruptcy Act, 11 U.S.C. § 96(a), are as follows:

1. A transfer as defined in this Act, of any property of the debtor;
2. to or for the benefit of a creditor;
3. for or on account of an antecedent debt;
4. made or suffered by such debtor while insolvent;
5. within four months before the filing by or against him of the petition initiating a proceeding under this Act;
6. the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

*1. Transfer of Property*

Clearly the debtor's transfer by deed of the Sublot in question, Sublot 7, satisfies

the definition of "transfer". See Section 1(30) of the Act, 11 U.S.C. § 1.

*2. Defendant Casgar as Creditor*

The testimony of both Casgar and the bankrupt's president, Randall Metheny, establishes that Casgar gave Metheny Seventeen Thousand Dollars ($17,000) as a down payment on several sublots owned by the bankrupt Randall Construction Company. Casgar and his partner subsequently withdrew the offer. The sublots were eventually sold to someone else. However, the Seventeen Thousand Dollars ($17,000) advanced by Casgar was never returned to him. At this point, Casgar owned a debt against the bankrupt and became a creditor. See § 1(11) of the Bankruptcy Act, 11 U.S.C. § 1.

*3. Antecedent Debt*

■ Again, according to the testimony of both Casgar and Metheny, Casgar gave the bankrupt a draft for Seventeen Thousand Dollars ($17,000) in December of 1977. The money was never returned even though the deal fell through. On May 1, 1978, unable to make payment in cash, Randall Construction Company deeded Sublot 7 to the defendant. Based on this evidence, the Court agrees with the conclusion of the Bankruptcy Judge that the debt was antecedent.[1]

*4. Insolvency of the Debtor*

A person is deemed insolvent, under the Bankruptcy Act, "whenever the aggregate of his property ... shall not at a fair valuation be sufficient in amount to pay his debts." 11 U.S.C. § 1(19). This application of a "balance sheet test" focuses not on the liquid funds available at the time of a transfer, but rather on the liquidation value of the debtor's assets compared to his current liabilities.

1. The Bankruptcy Judge found that the Seventeen Thousand Dollars ($17,000) advanced by Casgar was carried on the bankrupt's ledger as a debt. The ledger itself, however, was never produced. Metheny merely testified as to its contents. The Best Evidence Rule requires the original writing when a party seeks to prove the content of the writing. Therefore, it was error for the Bankruptcy Judge to make a find-

ing as to the content of the ledger based on testimony alone absent some evidence that the ledger could not be produced. However, there was sufficient other evidence to support the Bankruptcy Judge's conclusion that the Seventeen Thousand Dollars ($17,000) comprised an antecedent debt. It is, therefore, harmless error.

184

The determination of the "fair valuation" of the debtor's assets at a specified time is, at best, an inexact science, and may often be impossible. As a result, insolvency frequently must be determined by proof of other facts or consideration of other factors from which insolvency may be inferred. *Hassan v. Middlesex County National Bank*, 333 F.2d 838 (1st Cir.), *cert. den.*, 379 U.S. 932, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964).

■ The verified schedules of a bankrupt, containing a presumptively complete list of assets and liabilities, are admissible as evidence of the bankrupt's insolvency at the time of a particular transaction, where, as here, the transaction occurred shortly before the bankruptcy and without opportunity for any great change in either property or debts. See *In Re Mandel*, 135 F. 1021 (2d Cir. 1905).

■ The schedules of Randall Construction, Inc. indicated that its assets exceeded its liabilities by some Fifty Thousand Dollars ($50,000), exclusive of loans held by Metheny and Friedman. However, reduction in the face value of assets may be appropriate if those assets are not susceptible to liquidation and thus cannot be made available for payment of debts within a reasonable period of time. See *In Re United Financial Corp.*, 104 F.2d 593, 598 (7th Cir. 1939). Thus, for example, accounts receivable need not be taken at face value if circumstances cast doubt on their collectibility. The prospects of collection of such assets are evaluated in light of the past record of payment of the obligors, the obligors' current solvency, and the presence or absence of any dispute over the validity of the accounts or debts owed.

According to the testimony of both Metheny and his partner, Jeffrey Friedman, the nine accounts receivable scheduled for Forty Three Thousand Five Hundred Sixty-Eight Dollars ($43,568) were actually disputed, involved claims for faulty workmanship, and were generally uncollectible. Collection letters were written by Metheny and Friedman, but they were unable to effect collection in 1977 and 1978, despite repeated attempts.

In addition, the Osborn claim scheduled for Fifty Thousand Dollars ($50,000) actually involved only Twenty Thousand Dollars ($20,000), money erroneously paid by the bankrupt to the Osborns. Recovery attempts had been unsuccessful, and collection was not expected.

Thus, over Ninety Thousand Dollars ($90,000) of the bankrupt's assets were speculative at best.

■ Furthermore, evidence of the value at which certain real estate and machinery of the bankrupt were carried in the bankruptcy schedule, and the amount for which they were actually sold by the trustee, indicates that they were greatly overvalued, by perhaps as much as Twenty Thousand Dollars ($20,000).[2]

The Bankruptcy Court found, as fact, that if the bankrupt's assets had been liquidated on May 1, 1978, the date of the transfer, they would not have been sufficient to pay off the liabilities. In light of the evidence discussed above, this Court cannot hold that the Bankruptcy Judge's finding was clearly erroneous.

■ Finally, defendant contends that the Bankruptcy Court utilized the wrong standard in evaluating the fair value of the business, arguing that the business should have been valued at its "going concern" value. However, the fact that a company is nominally in existence is not persuasive in valuing the company at a "going concern" valuation. *Mitchell v. Investment Securities Corp.*, 67 F.2d 669 (5th Cir. 1933); see also *Langham, Langham & Burnett v. Blanchard*, 246 F.2d 529 (5th Cir. 1957).

2. It is proper and permissible for the trustee in bankruptcy to testify as to the value of the assets of the bankrupt, the amount of debts proved, the amount he realized at a sale at auction of the bankrupt's assets, and other like matters, as all these matters have a tendency to show the bankrupt's solvency or insolvency, at the time of the alleged preference. *Ridge Ave. Bank v. Studheim*, 145 F. 798 (3rd Cir. 1906). See also *Ely v. Greenbaum*, 85 F.2d 501 (2d Cir. 1936).

The evidence in this case supports the conclusion that Randall Construction Company was in a very precarious financial situation. Substantial amounts of payables were overdue more than 60 days. The bankrupt owed approximately One Hundred Twenty-Five Thousand Dollars ($125,000) to over 40 creditors, no new construction had begun in several months, and Metheny and Friedman had personally taken out substantial loans to benefit the corporation. To treat it as a "going concern" would be to fictionalize its condition.

### 5. The Four Month Rule

The bankruptcy petition was filed May 31, 1978. The Bankruptcy Court found that the transfer was accomplished on May 1, 1978.

### 6. Preference to Defendant as a Creditor

Defendant's receipt of the property allowed him to recoup full payment of his debt and more, no doubt to the detriment of other creditors.

■ A trustee seeking to avoid a preferential transfer must also satisfy the requirements of Section 60(b):

Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor was insolvent.

Actual knowledge of the debtor's insolvency need not be proven, only a "reasonable cause to believe" the debtor is insolvent is necessary. Therefore, constructive knowledge may be inferred from the circumstances surrounding the transfer. See *Prudential Insurance Company of America, Inc. v. Nelson*, 96 F.2d 487, 491 (6th Cir. 1938).

The Bankruptcy Judge in this case correctly noted that Casgar and Metheny were close friends who saw each other often both socially and professionally. Both Metheny and Casgar testified that the subject of Randall Construction Company's financial distress came up in their conversations. Metheny's willingness to sell the lots initially, his inability to repay Casgar's Seventeen Thousand Dollars ($17,000), his final willingness to turn over Sublot 7, were all signs to Casgar, a businessman himself, that Randall Construction Company was in dire straits. Casgar did have reasonable cause to believe that the bankrupt was insolvent.

### Valuation of Sublot 7

Defendant Casgar contends that the Bankruptcy Court erroneously permitted the court-appointed appraiser to testify, and that the valuation of the subject property at Thirty Thousand Dollars ($30,000) was against the weight of the evidence.

■ The determination of the qualifications of an expert is within the discretion of the Bankruptcy Judge, unless clearly erroneous as a matter of law. Bankruptcy Rule 915. The mere fact that Ms. Gaul is not a real estate broker does not disqualify her as an expert witness. Ms. Gaul's credentials as a realtor with 21 years experience in appraising properties seem more than adequate to qualify her as an expert with respect to evaluating the property in question. Casgar's characterization of Ms. Gaul's appraisal as a "drive-by inspection" is contrary to the record and merits no further discussion.

■ Finally, defendant argues that the Bankruptcy Judge unduly restricted the scope of cross examination. However, a review of the record reveals that defense counsel posed several hypothetical questions without laying a proper foundation, and the Bankruptcy Judge correctly sustained objections.

■ Defendant also disputes the Bankruptcy Judge's valuation of the subject property at Thirty Thousand Dollars ($30,000) based on the testimony of Jeanne Gaul, Frank Coolick (defendant's appraiser), and Randall Metheny. This Court has carefully reviewed their statements and finds that the three experts testified that, as of May 1, 1978, the property was worth between Seventeen Thousand Five Hundred Dollars ($17,500) and Twenty One Thousand Dollars

($21,000), with *no* foundation. With a foundation, their appraisals went up precipitously to between Twenty Six Thousand Dollars ($26,000) and Thirty Two Thousand Dollars ($32,000). Mr. Coolick testified that the foundation had indeed been installed prior to the 1977–78 winter, and Metheny corroborated that testimony when he stated that the foundation was on the subject property as of May 1, 1978. Based on this evidence, it was not clearly erroneous for the Bankruptcy Court to find Thirty Thousand Dollars ($30,000) to be the value of the property at the time of the transfer.

*Relief Granted*

 Defendant has characterized the Bankruptcy Court's judgment for plaintiff in the amount of Thirty Thousand Dollars ($30,000) as excessive. However, in Paragraph 4 of the Amended Complaint, the trustee stated the value of the subject property at Twenty Eight Thousand Dollars ($28,000) and prayed for judgment for that amount as alternative relief, and for any "further relief as may be just and equitable." In view of the expert testimony and the Bankruptcy Court's finding that the property was actually worth Thirty Thousand Dollars ($30,000), judgment in that amount was within the relief prayed for in the Amended Complaint.

*Conclusion*

For the reasons set forth above, the judgment of the Bankruptcy Court is affirmed.

IT IS SO ORDERED.