**In re Philip David KNAPP, Debtor.**

**Philip David KNAPP, Plaintiff,**

**v.**

**Thomas N. APPLEWHITE, Defendant.**

Bankruptcy No. 87–2069–BKC–3P1.
Adv. No. 89–203.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Aug. 28, 1990.

---

adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Albert H. Mickler, Jacksonville, Fla., for plaintiff.

Granville C. Burgess, Fernandina Beach, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon complaint predicated upon 11 U.S.C. § 547 seeking to avoid the transfer of $275,000. Trial was held on August 29, 1989, and May 2, 1990, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

Plaintiff is a certified public accountant licensed to practice in the State of Florida. Defendant is a retired merchant seaman who loaned a significant portion of his lump sum retirement benefit to plaintiff. The parties originally met in 1981 when defendant became a client of the plaintiff and maintained an accountant/client relationship at all times relevant to this proceeding.

Plaintiff began soliciting loans in 1985 from defendant. Initially the sum of $50,-000 was loaned to finance the purchase of investment real estate.

Subsequently plaintiff began negotiations with third parties to purchase liquor stores, and licenses as well as other properties. In order to finance the acquisitions plaintiff and defendant (and defendant's wife) entered into an Agreement of Intent dated April 7, 1986. The terms provided for the defendant to receive a 30 percent interest in the corporation of Appkapp, Inc., Nassau Lounges, Inc., and Kapple, Inc., in return for rolling over the previous $50,000 loan and committing an additional advancement of $150,000. The minutes of Nassau Lounges, Inc., dated September 10, 1986, records the $150,000 as a loan to that corporation.

During the entire period plaintiff and defendant were associated, plaintiff was the majority stockholder and controlled all business operations, funds, and corporate books and records of Nassau Lounges, Inc., Appkapp, Inc., and Kapple, Inc. The corporate books and records do not characterize defendant's interest in these corporations other than as a stockholder. There are no promissory notes or interest payments to substantiate any loans to the corporations by defendant.

By May of 1987, plaintiff and defendant began to disagree over the management of the corporations. In order to settle their differences they agreed to sell the "5-Points Liquor Store and license" to 5-Points Liquor Store, Inc., in exchange for stock and cash.

The terms were contained in Stock Buy-Back and Note Pay-Off Agreement ("Agreement") dated June 25, 1987, containing this provision:

> Both parties agree to a complete pay-off and satisfaction of all notes due to Thomas N. Applewhite from Philip D. Knapp. The total amount of the stock purchase and satisfaction of notes is $275,000.00.

A closing occurred on June 25, 1987, and the terms of the Stock Buy-Back and Note Pay-Off were incorporated into a Settlement Agreement and defendant personally received a $275,000.00 credit, with $30,-000.00 of that amount allocated to the purchase of his 30 percent stock interest and $245,000.00 credit to the purchase of the liquor store.

On January 18, 1988, plaintiff filed a Chapter 11 petition. At filing, plaintiff listed defendant as a creditor in the amount of $245,000.00. The exact amount of the loans to plaintiff is indeterminable as nei-

ther plaintiff nor defendant produced evidence as to amount or disposition.

Plaintiff filed this adversary proceeding seeking to avoid the $275,000.00 credit as a preferential transfer pursuant to 11 U.S.C. § 547.

At trial defendant asserted: (i) property transferred was not that of the plaintiff, but corporate assets; (ii) he is not a creditor of the plaintiff but rather an investor in the corporations; (iii) financial statements made to banks just weeks prior to filing showed the plaintiff to be solvent; (iv) the transfer did not deplete the estate, and (v) he was not an insider due to the de minimis nature of his involvement and shareholdings.

## CONCLUSIONS OF LAW

### Preferential Transfer

11 U.S.C. § 547 provides in relevant part:

(b) ... the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

### Transfer of an Interest of the Debtor

When a creditor is paid from the funds of a third party, the Court must look to the source of control over distribution of the funds to determine whether the payment is an avoidable preference. If the debtor determines the disposition of the funds from the third party and designates the creditor to be paid, the funds are available for payment to creditors in general and the funds are assets of the estate. *In re Jaggers*, 48 B.R. 33, 36 (Bankr.W.D.Texas 1985); *Matter of Howdeshell of Ft. Myers*, 55 B.R. 470, 474 (Bankr.M.D.Fla.1985).

Corporate Resolution No. 3 of Nassau Lounges, Inc., and Appkapp, Inc., demonstrates that plaintiff was the owner of 70 percent of the outstanding stock of both corporations. Plaintiff was also the sole director and president. In order to close the Agreement, plaintiff was required to obtain a release of the 5–Points Liquor Store from the mortgage and substitute another parcel of realty. These facts support that plaintiff controlled the disposition and distribution of the funds scheduled in the Agreement and that the transfer was that of "an interest of the debtor in property."

### Antecedent Debt

11 U.S.C. § 101(11) defines "debt" as a liability on a claim. 11 U.S.C. § 101(4) defines "claim" broadly to include any "right to payment, whether or not such right is ... legal, equitable...."

Defendant characterized his transactions with plaintiff as a "business venture" or "investment." However, the evidence at trial shows instead that the transactions were loans. If the monies that were given to plaintiff had been an investment, the defendant would not have been entitled to recover his full claim since the value of a true investment rises or falls upon success or failure of the venture. Notwithstanding this basic approach to investment theory, defendant sought repayment of all funds given to plaintiff over the course of their dealings. Defendant initially advanced the funds to plaintiff individually, and the corporations were formed at a later date. De-

fendant was then granted an interest in the corporation.

### Insolvency

At trial plaintiff introduced a balance sheet showing his assets at $637,000 and liabilities at $1,106,000 as of the date of the closing agreement. Defendant countered with the introduction of various financial statements claiming solvency submitted by plaintiff for loan applications during the applicable time period.

In determining the issue of "insolvency" in preference actions, the Court may ignore pre- or even post-petition valuations of assets that are overly optimistic or unrealistic. Accordingly, courts have refused to adopt "solvent" figures from the debtors' schedules, when those schedules were determined to be an "overly optimistic" appraisal of the debtor's assets in an effort to secure financing. *In re American Insulator Co.*, 60 B.R. 752, 755 (Bankr.E.D.Penn. 1986).

Within the context of a preference action, courts have refused to accept the proof of solvency contained in the debtor's schedules when a post-petition sale of the debtor's real property reflected a much lower market value. The schedules were deemed not controlling in *In re Ressler*, 61 B.R. 403, 407 (Bankr.E.D.Tenn.1986); and *Matter of Howdeshell of Ft. Myers*, supra.

Errors discovered subsequent to a debtor's balance sheet have been used to retroactively determine the debtor to be insolvent. *Matter of Howdeshell of Ft. Myers*, supra. In that case, although the debtor's balance sheet occurred at a date later than the preferential transfer, the court found insolvency where the debtor's financial condition did not change during the interim period between the transfer and the statement.

In this proceeding, subsequent events have proven that the pre-petition asset valuations of plaintiff, in efforts to gain additional financing, were excessive.[1] The evidence presented clearly establishes that plaintiff was insolvent on the date of the transfers.

### Preference Period

The Bankruptcy Code provides for the avoidance of preferential transfers to insiders that occur within one year prior to the filing of the petition. 11 U.S.C. § 547(b)(5). The Code's definition "insider" includes any "[a]ffiliate, or insider of an affiliate...." 11 U.S.C. § 101(30). The Court then looks to the Code's definition of "affiliate", which includes a "[c]orporation twenty (20%) percent or more of whose outstanding voting securities are directly ... owned, controlled ... by the debtor...." 11 U.S.C. § 101(2). As a matter of law the Court finds defendant to be an insider of the affiliate corporations Nassau Lounges, Inc., and Appkapp, Inc.

The transaction in dispute occurred on June 25, 1987. Plaintiff filed his petition on January 18, 1988. Therefore, the transfer in question falls within the time frame provided in 11 U.S.C. § 547(b)(5).

### More Than Liquidation

The Chapter 11 plan filed by the plaintiff provides for unsecured creditors to receive at least 10 percent of their claims and as much as 40 percent based upon pending litigation. Certainly, defendant received more through the Agreement than he would have under the Chapter 11 plan, liquidation in a Chapter 7 proceeding, or had the transfer not been made.

### CONCLUSION

The plaintiff has proven the elements of 11 U.S.C. § 547(b) and is permitted to avoid the transfer of $275,000 to defendant under the Agreement.

The Court will, by separate order, enter a Final Judgment in favor of plaintiff.

---

1. One example of such excess in the *Asset and Corresponding Liability Sheet* given to various banks is the valuation of two properties at $4,200,000. These properties were eventually sold at a foreclosure sale for $400,000.