In re SAFE–T–BRAKE OF SOUTH FLORIDA, INC., Debtor.

Marika TOLZ, Trustee, Plaintiff,

v.

BARNETT BANK OF SOUTH FLORIDA, N.A., Defendant.

Bankruptcy No. 90–25733–BKC–AJC. Adv. No. 92–1016–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

Oct. 13, 1993.

Reggie David Sanger, Fort Lauderdale, FL, for trustee.

Janie Locke Anderson, Coll, Davidson, Carter, Smith, Salter & Barkett, Miami, FL, for Barnett Bank.

## MEMORANDUM OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the court on cross motions of the trustee, Marika Tolz, plaintiff in this adversary proceeding to recover an alleged preference, and the defendant in the adversary, Barnett Bank of South

Florida, N.A., for summary judgment brought under Fed.R.Civ.P. 56, made applicable to adversary proceedings in bankruptcy cases by Fed.R.Bankr.P. 7056. For the reasons stated below, this court denies the Trustee's motion for summary judgment and grants Barnett Bank's cross motion for summary judgment.

### FACTS

Safe-T-Brake of South Florida, Inc. ("Debtor") was a wholesale brake shoe manufacturer and reconstructor. In early 1988, the Debtor experienced rapid growth and found itself in need of extra operating funds. On April 15, 1988, the Debtor obtained a revolving line of credit from Barnett Bank of South Florida, N.A. ("Defendant"). The loan provided the Debtor with necessary working capital. It was secured by a blanket security interest in the Debtor's assets, including after-acquired property. Barnett perfected its security interest on April 15, 1988 by filing a UCC–1 Financing Statement with the Florida Secretary of State. In addition, the loan was personally guaranteed by Debtor's principals and/or shareholders Wallace Millman, Anthony Ferrante, Francis Pulini, and Jeanette Millman, Wallace Millman's wife.

The loan provided the Debtor with a working capital line of credit in the amount of $2.5 million. Thereafter, from time to time, the Debtor borrowed additional funds from Barnett, also secured by Barnett's perfected blanket security interest in the Debtor's assets. This relationship continued until late 1989, when Barnett refused to renew the Debtor's obligations to the bank. The Debtor obviously had no choice but to find another lender if it hoped to stay in business. In early 1990, the Debtor began negotiations with SunBank of South Florida, N.A. ("SunBank"). As a result of these negotiations, the Debtor entered into an asset-based lending agreement with SunBank in March 1990.

Under the terms of the Revolving and Term Loan and Security Agreement ("the Agreement"), SunBank was to extend to the Debtor up to $3,500,000.00 in funds for operating capital, as well as a $255,000.00 term loan. Pursuant to the Agreement, SunBank required a first priority lien in the Debtor's assets including assets that were subject to Barnett's prior lien. There is no suggestion anywhere in the record that Barnett was willing to subordinate its first priority lien claim on the Debtor's assets. Therefore, the only way that SunBank could have the first priority lien on the Debtor's assets would be by somebody paying off the Barnett loan. As of the closing of the SunBank loan, March 5, 1990, the total amount the Debtor owed Barnett was $3,271,125.63.

Of course, the Debtor did not have, nor could it borrow, sufficient funds to both close the SunBank loan and pay off Barnett independent of the SunBank loan transaction. Thus, at least nominally at the request of the Debtor, the loan Closing Statement and Disbursement Schedule instructed SunBank to pay directly to Barnett sufficient funds to completely satisfy its obligations to Barnett.

To that end, Debtor requested pay off figures from Barnett, which Barnett supplied. The Debtor obtained the necessary information from Barnett, and, at the time the SunBank loan was funded, the Debtor's principal signed the Closing Statement. This Closing Statement authorized SunBank to transfer from the loan proceeds enough money to satisfy the Debtor's obligations to Barnett. SunBank made the transfer by wire on March 5, 1990. Thereafter, every time the Debtor wished to draw upon its line of credit with SunBank, the Debtor's principal would call in and provide verbal authorization. Another loan report would be issued bearing the signature of the Debtor's principal, and the disbursement of funds would be authorized.

Approximately four months after the loan closing, SunBank discovered that the Debtor's principals had been fraudulently overstating the size and extent of the Debtor's inventory and accounts receivable. Not surprisingly, SunBank called the loan. Of course, the Debtor was unable to repay to SunBank the full amount of the debt it owed SunBank, and on August 20, 1990, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 5, 1990, the case was converted to Chapter 7 and Marika Tolz appointed Chapter 7 Trustee. On October 9, 1992, the

Trustee filed the instant complaint against Barnett, seeking to recover the wire transfer SunBank had made to Barnett on March 5, 1990 as an avoidable preference under section 547(b) of the Bankruptcy Code.

In support of its motion for summary judgment, Barnett relies on the "earmarking doctrine" which it says protects the payment it received from SunBank on the Debtor's behalf on March 5, 1990 from being avoided as a preference. In support of her motion for summary judgment, the Trustee contends that the record does not support the application of the earmarking doctrine in the instant proceeding. Instead, she contends, the facts demonstrate that the transfer of funds from the Debtor to Barnett was a preference and thus voidable under section 547(b) of the Bankruptcy Code.

### JURISDICTION AND PROCEDURE

The court has jurisdiction over this matter under 28 U.S.C. § 1334 as a matter arising under § 547 of the Bankruptcy Code. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and is before the court pursuant to the Standing Order of Reference of the United States District Court for the Southern District of Florida automatically referring bankruptcy cases and proceedings to this court for hearing and determination.

### STANDARD FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### DISCUSSION

I. Voidable Preferences

The elements of a voidable preference are set forth in section 547(b) of the Bankruptcy Code. That section sets out five specific enumerated elements the trustee must allege and prove in order to establish that the transfer in question is a voidable preference. Sections 547(b) and (g) require the trustee to prove that the transfer in question was:

(1) to or for the benefit of a creditor,

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made,

(3) made while the debtor was insolvent,

(4) made within 90 days before the date of the filing of the petition, or within one year before the date of the filing of the petition, if the creditor was an "insider" at the time of the transfer, and

(5) the transfer enables the creditor to receive a greater percentage of its claim than that creditor would have received had the transfer not taken place and the debtor's assets been liquidated in a Chapter 7 case.

The trustee has the burden of proving each of the elements of section 547(b) by a preponderance of the evidence in order to avoid the transfer in question. *See* § 547(b), (g); *In re Prescott*, 805 F.2d 719, 726 (7th Cir.1986); *see also Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

There is, however, a sixth element that the trustee must prove to establish that a transfer is a voidable preference. While this sixth element is not specifically identified and enumerated, as are the other elements of a voidable preference in section 547(b), it nevertheless appears clearly in the introductory language in section 547(b). The Bankruptcy Code requires the trustee to establish by a fair preponderance of the evidence that there was a transfer of " ... an interest of

the debtor in property." *See* § 547(b). The law is clear that if a third party chooses for whatever reason to use its own property, in which the debtor has no interest, to pay one or more of the debtor's creditors, even if the other five elements of a voidable preference are established, the transfer cannot be recovered by the trustee. *See e.g. Coral Petroleum Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1356 (5th Cir.1986); *In re Hartley,* 825 F.2d 1067, 1070–1071 (6th Cir.1987). This notion, that the trustee must show a transfer of an interest of the debtor in property, becomes particularly important in the application of the "earmarking doctrine" in proceedings to avoid a transfer as a preference.

▮ Under the earmarking doctrine, a transfer cannot be avoided where a third party makes a transfer of its property directly to one or more of the debtor's creditors or transfers property to the debtor with the clear agreement that the property transferred is to be used by the debtor to pay one or more of its creditors, and the property is in fact so used. The transaction must be structured in such a way that the debtor never acquires an interest in the property to be transferred to the debtor's creditors.

Barnett argues that the earmarking doctrine applies to the transaction in question. It says that the SunBank loan was structured in such a way that Barnett's lien claims had to be fully satisfied, and SunBank had to be in a first priority lien position, before the loan transaction could close and the Debtor given an interest in the rest of the loan proceeds.

▮ Application of the earmarking doctrine is inherently fact based. The court must determine the precise agreement between the debtor and the transferor of property in order to determine whether the debtor ever acquired an interest in the property that was transferred. Therefore, the court took the unusual step in this proceeding of conducting an evidentiary hearing in connection with the motion for summary judgment. Such a hearing is authorized by Fed.R.Civ.P. 43(e), which is made applicable to this proceeding by Fed.R.Bankr.P. 9017. The reason for the hearing was, frankly, judicial economy. If the facts supported application of the earmarking doctrine to the transaction in question, the Trustee's attempt to avoid the transfer in question as a preference would fail. Accordingly, if the earmarking doctrine applied, the court need not resolve some of the more complicated issues raised by the parties, such as the application of the *Deprizio* doctrine in the 11th Circuit. *See Levit v. Ingersoll Rand Financial Corp.,* 874 F.2d 1186 (7th Cir.1989). The scope of the hearing was confined to facts that would be relevant in determining the applicability of the earmarking doctrine to the transaction in issue.[1]

## II. The Earmarking Doctrine

▮ The earmarking doctrine is not new with the Bankruptcy Code. Instead, the doctrine has long been recognized as preventing the trustee from avoiding certain transfers that appear at first blush to be preferences. In its most basic form, the doctrine applies to those situations where a third party supplies its own property to the debtor to enable the debtor to satisfy its obligations to a certain specific creditor. In other words, the property of the third party is perhaps given to the debtor, but is earmarked for payment to a specific creditor of the debtor. *Coral Petroleum Inc.,* 797 F.2d at 1356; *In re Hartley,* 825 F.2d at 1070–1071.

---

1. In reviewing the transcript of the evidentiary hearing, the court has discovered, as trial judges often do, that it used language in an off the cuff remark that may have done more to confuse the parties than to clarify matters. The court misspoke when it said that the other issues raised by the summary judgment had been "disposed of". That is not correct. Instead, the situation is that which the court immediately described in the next sentence, i.e., the only issues of material fact left to be resolved in connection with the cross motions for summary judgment were those raised in connection with the applicability of the earmarking doctrine. Once the record was complete in that regard, no issues of material fact would remain, and the court would be in a position to rule on the earmarking doctrine, and, if the Trustee won on earmarking, to rule on the rest of the issues raised by the parties. Those other issues have not been "disposed of". Instead, they continue to pend before the court and are ripe for determination.

In such circumstances, so long as the property used to pay the debt does not become property of the debtor, the trustee cannot avoid the transfer as the trustee cannot establish that there has been a transfer "of an interest of the debtor in property." Instead, the property transferred is the property of the third party, not of the debtor. Thus, if earmarking applies, the property never becomes that of the debtor, and the trustee's effort to recover the property as a preference fails, because she will be unable to establish an element of a preferential transfer under section 547(b). *See In re Interior Wood Products Co.*, 986 F.2d 228, 231 (8th Cir. 1993); *In re Bohlen*, 859 F.2d 561, 565 (8th Cir.1988).

■ The Trustee takes the position that earmarking should be limited to those situations where the creditor infusing the new money into the debtor was itself also obligated to pay the original debt, i.e., those situations where the funds were provided by one who was a surety, subsequent endorser, or guarantor on the contract. *In re Bohlen*, 859 F.2d at 564, *citing National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042 (1912). Clearly that was once the law.

■ However, the Trustee's argument that the earmarking doctrine should be so limited ignores the march of history. Caselaw has extended the earmarking doctrine beyond the guarantor scenario to those where a new creditor, even one without a prior relationship with the debtor, facilitated payment of an existing debt. This caselaw has come to recognize that regardless of the lender's prior relationship with the debtor, or lack thereof, replacing one creditor with another of equal priority does not diminish the estate and thus no voidable preference results. *In re Bohlen*, 859 F.2d at 565–566. There is no doubt under current caselaw that the earmarking doctrine applies both in those cases where the money to pay the debt comes from a guarantor and where the outside creditor is merely a lender of substitute funds. *Accord In re Grabill Corp.*, 135 B.R. 101, 109 (Bkrtcy.N.D.Ill.1991). *Cf. In re Bohlen*, 859 F.2d at 565 (holding that if presented with this situation as a matter of first impression, the court would not extend the doctrine where the new lender is not a guarantor because in that case the earmarking doctrine does not help either the new creditor nor the debtor).

■ By the same token, modern caselaw has come to recognize that the earmarking doctrine may apply both in those situations where the lender of new funds pays the prior creditor directly or where the funds are entrusted to the debtor with the understanding that the debtor is to use the money only to pay the debtor's obligation to a specific creditor designated by the source of the funds. *In re Bohlen*, 859 F.2d at 565. In the latter situation, the debtor effectively holds the money "in trust" for the benefit of the designated creditor and thus the debtor has no dispositive "control" over the funds. Under this analysis, the new money, although in possession of the debtor, never becomes property of the debtor because the debtor has no control over how the funds are ultimately distributed, and thus no voidable preference results. *Id.*

A. The burden of establishing the applicability of the earmarking doctrine.

■ The initial determination the court must make is who has the burden of establishing the applicability of the earmarking doctrine in the context of the instant dispute. Needless to say, both the Trustee and the Defendant each take the position that the other has the burden of proving that the doctrine does or does not apply.

The question of whether the Trustee or Barnett has the burden of proof on the earmarking question turns on whether the doctrine is an affirmative defense to a preference avoidance, or whether the nonavailability of the earmarking doctrine is an element the trustee must establish in order to avoid the transfer at issue as a preference. The plain meaning of section 547 necessarily leads to the conclusion that proof of the nonapplicability of the earmarking doctrine is an element the trustee must prove in order to establish that the transaction in question was indeed an avoidable preference. *In re Prescott*, 805 F.2d at 726.

■ Section 547(b) provides that the trustee may "avoid any transfer of an interest of the debtor in property" that meets the balance of the elements of a preference in that section. It logically follows that if what is transferred is not an interest of the debtor in property, the trustee cannot have the transfer avoided under section 547. This logic is further confirmed by the clear language of section 547(g) which assigns to the trustee "the burden of proving the avoidability of a transfer under subsection (b) of this section...." Earmarking is not a defense to an otherwise avoidable transfer under section 547(c). Instead, it is a shorthand way of denying that what was transferred was an interest of the debtor in property. Denial of an allegation does not shift the burden of proof. Thus, it is up to the trustee to prove by a fair preponderance of the evidence that the earmarking doctrine does not apply, and that what was transferred was in fact property in which the debtor had an interest. *Accord In re Interior Wood Products Co.,* 986 F.2d at 231.

## B. When does a debtor acquire an interest in property?

■ The earmarking doctrine puts into issue an essential element of a preference action; namely, whether the debtor had an interest in the property transferred. *See* § 547(b). In the instant dispute, the question becomes, did the Debtor have an interest in the proceeds of the SunBank loan at the time SunBank wired the payoff funds to the defendant? In resolving the question of interest in property for section 547(b) purposes, courts tend to focus on "whether the debtor was actually able to exercise sufficient dominion and control over the funds to demonstrate an interest in property." *Matter of Smith,* 966 F.2d 1527, 1531, (7th Cir.) *cert. dismissed,* —— U.S. ——, 113 S.Ct. 683, 121 L.Ed.2d 604 (1992) (Flaum, J., dissenting). In fact, the court finds the reasoning in Judge Flaum's dissent in *Smith* to be persuasive.[2]

In his dissent in *Smith,* Judge Flaum set forth a logical approach for determining when a debtor exercises sufficient "control" over property to give rise to an interest in that property. *Smith,* 966 F.2d at 1537. Judge Flaum concluded that, in the earmarking context:

[C]ontrol has two components: first, the power to designate which party will receive the funds; and, second, the power to actually disburse the funds at issue to that party. In other words, control means control over identifying the payee, and control over whether the payee will actually be paid.

*Id.* at 1539. Judge Flaum aptly characterized the second element of control as "dispositive control." *Id. Accord In re Montgomery,* 983 F.2d 1389, 1394 (6th Cir.1993).

This court finds Judge Flaum's two-prong analysis to be the appropriate test to be used in determining whether what was transferred was an interest of the debtor in property. Other courts have discussed the issue of control as being one dimensional when applying the earmarking doctrine. *In re Network 90,* 126 B.R. 990 (N.D.Ill.1991) ("what is dispositive of the earmarking determination is whether or not the debtor had control over the funds"); *Coral Petroleum, Inc.,* 797 F.2d at 1361 ("to look at the identity of the actual earmarker is to lose sight of the fact that whoever it was, it was not [the debtor]"); *Matter of Howdeshell of Ft. Myers,* 55 B.R. 470, 474 (Bkrtcy.M.D.Fla.1985) ("if the debtor determines the disposition of the funds and designates the creditor to whom payment is made, it is clear that the funds are available for payment to creditors in general and the funds are an asset of the estate").

The problem with this line of cases is that it offers no parameters for determining just how much control by the debtor is "enough" to give rise to an "interest in property." Judge Flaum's dissent fills this gap. By explicitly breaking down the rather amorphous notion of "control" into two specific parts, Judge Flaum provides a more concrete test for courts to apply when determining

---

**2.** This is ironic since were this court sitting in its home district, the Northern District of Illinois, it would be bound by the majority in *Smith* and could not rely on Judge Flaum's dissent. Fortunately, the court suffers from no such disability while sitting in the Southern District of Florida.

whether funds have been sufficiently ear-
marked so as to prevent the debtor from
acquiring an interest in the property trans-
ferred.[3]

### C. Did the Debtor have an interest in the funds that SunBank wired to Barnett?

 Application of Judge Flaum's dissent
in *Smith* necessarily leads to the conclusion
that the Debtor had no interest in the funds
transferred to Barnett. First, it is clear that
at the time of the closing of SunBank's loan,
the Debtor did not have unfettered discretion
to designate to whom the loan proceeds were
to be disbursed. Instead, the disbursement
of the loan proceeds was dictated by Sun-
Bank. SunBank required a first priority lien
on the Debtor's assets. To achieve this, the
prior lienholder, Barnett, had to be paid off.
As of the date of closing, Barnett had not
been paid off and had not released its lien.
The record is clear that the Debtor was
unable to pay Barnett with either its own
funds or funds supplied by some other lender
or investor.

As a result of the Debtor's inability to pay
off Barnett prior to the date of closing, Sun-
Bank was able to hold a "financial gun" to
the Debtor's head. The Debtor had no
choice: it either had to name Barnett as a
recipient of the SunBank proceeds in the
Closing Statement and Disbursement Sched-
ule or SunBank would not disburse the
funds. The fact that the Debtor went

through the charade of informing SunBank
as to the amount due to Barnett and nomi-
nally authorizing the transfer of funds by
signing the Closing Statement does not indi-
cate that the Debtor had any realistic "power
to designate which party [would] receive the
funds." *Smith*, 966 F.2d at 1539. In this
case it was SunBank, not the Debtor, who
realistically exercised the power in naming
Barnett as a recipient. The Debtor's signa-
ture on the dotted line was merely a techni-
cality. *See also In re Trinity Plastics, Inc.*,
138 B.R. 203, 206 (Bkrtcy.S.D.Ohio 1992) (en-
dorsement of a joint check by a debtor and
guarantor made out to prior creditor did not
evidence sufficient control by the debtor to
abrogate application of earmarking doctrine).

Assuming, *arguendo*, that the Debtor did
have the power to designate the recipient of
the funds, the Debtor nevertheless did not
have dispositive control as defined by Judge
Flaum, because it lacked the power to actual-
ly disburse the funds to that party. *Smith*,
966 F.2d at 1539. Theoretically, the Debtor
could have named any party, for example the
undersigned's law clerk, to be the recipient of
the loan proceeds. However, at closing, it is
not likely that SunBank would have actually
disbursed any funds to my law clerk, regard-
less of the Debtor's instructions. By the
same token, there is no way SunBank would
have distributed any proceeds of the loan to
anyone other than Barnett regardless of any

---

**3.** Some courts have employed a different ap-
proach in deciding whether funds transferred to
a debtor are earmarked for a specific creditor
and thus excluded from the debtor's estate. This
alternate earmarking test is set out in *In re
Bohlen*, 859 F.2d at 566. In *Bohlen*, the Eighth
Circuit held:

> [A] transaction should meet the following re-
> quirements to qualify for the earmarking doc-
> trine:
> (1) the existence of an agreement between the
> new lender and the debtor that the new funds
> will be used to pay a specified antecedent debt,
> (2) performance of that agreement according
> to its terms, and
> (3) the transaction viewed as a whole (includ-
> ing the transfer in of the new funds and the
> transfer out to the old creditor) does not result
> in any diminution of the estate.

*Id.* (footnotes omitted).
 Although the *Bohlen* test has been applied in a
number of cases, as previously noted, this court
finds that the key issue to be determined is the

extent of the debtor's control over the newly
infused funds. It is unnecessary to consider the
elements set forth in *Bohlen* if it is shown that
the debtor did not have control over the funds,
and thus never had an interest in the property.
 This is particularly true of the third prong, no
diminution of the estate: "Absent any loss of the
debtor's property or depletion of its estate, other
creditors are not harmed, and hence there is no
real reason under § 547 to avoid the prefer-
ence." *Smith*, 966 F.2d at 1538 (Flaum, J. dis-
senting). As this reasoning indicates, the legal
theories of "earmarking" and "no diminution of
the estate" have essentially the same meaning.
*Id.* Both recognize that if what was transferred
was not an interest of the debtor in property, the
debtor's creditors are not harmed by the transac-
tion. No assets that otherwise would have been
available to the creditors as property of the es-
tate, see § 541, have been given to one creditor
allowing it to get more than it would otherwise
have received from the estate.

instructions the Debtor might give it unless and until Barnett was paid off, and SunBank had a first priority lien. Thus, once again, SunBank, not the Debtor, had dispositive control as a practical matter. *Smith,* 966 F.2d at 1539.

Absent dispositive control, the Debtor never had an interest in the funds transferred to Barnett. Absent an interest in the funds, the property was never part of the Debtor's estate. Absent any loss of property of the Debtor's estate, other creditors were not harmed, and there was no preference under section 547(b).

## CONCLUSION

For the reasons stated in this memorandum opinion, the Trustee's motion of summary judgment is denied and Barnett Bank's cross motion for summary judgment is granted.