**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-20699

GASMARK LIMITED LIQUIDATING TRUST

Plaintiff

VERSUS

LOUIS DREYFUS NATURAL GAS CORPORATION

Defendant - Appellee-Cross-Appellant

VERSUS

BRENDA HEROD, Trustee for Gasmark Limited Liquidating Trust

Trustee - Appellant-Cross-Appellee
****************************************************************

In The Matter Of: GASMARK LTD
                  Debtor
------------------------------
BRENDA HEROD, Trustee for Gasmark Limited Liquidating Trust

Plaintiff - Appellant

VERSUS

DEKALB ENERGY COMPANY

Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before REAVLEY, DAVIS, and DUHÉ, Circuit Judges.

JOHN M. DUHÉ JR., Circuit Judge:

This case involves questions of proof of insolvency and the affirmative defense of payment in the ordinary course of business in the context of a bankruptcy trustee's effort to avoid payments made by the debtor shortly before filing for bankruptcy. The district court found that insolvency was established and that the ordinary course of business defense prevailed. We affirm in part and reverse and remand in part.

I

FACTUAL BACKGROUND

GasMark, Ltd. purchased natural gas and resold it to consumers. Louis Dreyfus Natural Gas Corporation ("LDNG") and DeKalb Energy Company ("DeKalb") delivered gas to GasMark in October of 1992. DeKalb sent an invoice to GasMark on November 9, 1992 that was due on November 30, 1992. GasMark paid the invoice on December 8, 1992. GasMark paid LDNG on February 28, 1993. GasMark filed for bankruptcy on March 2, 1993. GasMark's bankruptcy trustee ("trustee") sued under 11 U.S.C. § 547(b) to avoid both payments as preferential transfers. DeKalb asserted the ordinary course of business defense to preferential transfers under 11 U.S.C. § 547(c)(2), and requested a jury trial. The suits against DeKalb and LDNG were consolidated.

2

The trustee moved for summary judgment against LDNG, and for partial summary judgment on DeKalb's ordinary course of business defense. The trial judge determined that the trustee had proven GasMark's insolvency at the time of the payments, but had not shown that the payment to DeKalb was outside the ordinary course. The court ordered LDNG to repay the preference amount plus interest. The trustee moved to clarify, alter, or amend, asserting that DeKalb had not moved for summary judgment, that the trustee had not presented all evidence in opposition to the ordinary course defense, and that the burden rested on DeKalb to prove that the payment was in the ordinary course of business. In response, the judge allowed DeKalb 30 days to move for summary judgment on the ordinary course defense. DeKalb timely filed the motion. Following consideration of the summary judgment motions without oral argument, the judge issued a second opinion mirroring the findings of the first, and granting summary judgment to the trustee against LDNG, and granting summary judgment to DeKalb against the trustee.

II

ANALYSIS

We review a grant of summary judgment de novo, viewing the facts and inferences in the light most favorable to the nonmovant. See Hall v. Gillman Inc., 81 F.3d 35, 36-37 (5th Cir. 1996). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and the moving party is

3

entitled to judgment as a matter of law." R. Bankr. P. 7056 (stating that Fed. R. Civ. P. 56(c) applies in adversary proceedings); Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists only if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). The moving party bears the burden of establishing that there is no genuine issue of material fact. See id. at 256. The moving party may also establish its entitlement to summary judgment by showing an absence of evidence supporting the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A

CLAIM AGAINST LDNG

Under §547(b),

the trustee may avoid any transfer . . .-
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor . . . ;
    (3) made while the debtor was insolvent;
    (4) made-
        (A) on or within 90 days before the date of the filing of the petition; . . .
    (5) that enable such creditor to receive more than such creditor would receive if-
        (A) the case were a case under chapter 7 of this title . . . .


The only elements at issue between the trustee and LDNG are whether

4

GasMark was insolvent on the date of GasMark's payment to LDNG, and whether LDNG received more that it would have if the case were under Chapter 7.  We conclude that the district judge did not err in granting the trustee summary judgment.

Insolvency is a "financial condition such that the sum of [the] entity's debts is greater than all of [its] property, at a fair valuation . . . ." 11 U.S.C.A. § 101(32)(1993).  A debtor is presumed insolvent on and during the 90 days before filing for bankruptcy.  See 11 U.S.C.A. § 547(f) (1993).  "[A] presumption imposes on the party against whom it is directed the burden of going forward  with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion . . . ."  Fed. R. Evid. 301.  The party seeking to rebut the presumption must introduce some evidence to show that the debtor was solvent *at the time of the transfer*; mere speculative evidence of solvency is not enough.  See <u>Sandoz v. Fred Wilson Drilling Co. (In the Matter of Emerald Oil Co.)</u>, 695 F.2d 833, 839 (5th Cir. 1983) (emphasis added).  Summary judgment in favor of the trustee is appropriate when the party seeking to rebut the presumption fails,  <u>see id.</u> at 834-39 (affirming summary judgment in an avoidance of preference case based solely on the presumption), or when there is no genuine issue of material fact concerning insolvency and the trustee is entitled to judgment as a matter of law, <u>see</u> R. Bankr. P. 7056; <u>Celotex Corp. v. Catrett</u>, 477

U.S. 317, 322 (1986).  To avoid summary judgment in this case, LDNG must raise a genuine issue of material fact concerning whether it rebutted the presumption.  Also, since the trustee provided affirmative evidence of insolvency and did not rely only on the presumption, LDNG must raise a genuine issue of material fact concerning  GasMark's insolvency.

The trustee submitted affirmative evidence of insolvency. Certified Public Accountant ("CPA") Loretta Cross affirmed that on the date of GasMark's payment to LDNG, GasMark's balance sheet, at fair valuation, showed $24,514,000 in assets and $41,528,000 in liabilities, creating a $17,014,000 deficit.

LDNG objects to the trustee's reliance on the balance sheet method of valuation.  LDNG argues that, because GasMark is a broker, many of its assets are soft assets that do not appear on a balance sheet.[1]  Therefore, the fair valuation should be based on a going concern value.  We need not resolve the issue of the proper method of valuation, since we find that even LDNG's going concern value evidence does not raise a genuine issue of material fact concerning whether LDNG rebutted the presumption of GasMark's insolvency, or GasMark's insolvency in fact.

_____

[1]Gene Stoever, a CPA and LDNG's expert witness, testified that assets not typically reported on a broker's balance sheet include "the company's contracts, contractual relationships and strategic alignments, its market position, its competitive ability, its internal operating systems, its computer system and programs, the management and personnel of the enterprise, their contacts and other similar attributes . . . ."

6

To establish a genuine issue of material fact LDNG offers three items of evidence. First, CPA and expert witness Gene Stoever affirmed that based on GasMark's December 1992 Business Overview, "a potential purchaser . . . would have attributed value to the company in excess of the net partner's equity as stated on GasMark's balance sheet." Second, a New York State Electric & Gas Co. ("NYSEG") interoffice memo dated February 25, 1993 states that "[b]ased on the numbers available at this time, GasMark produces a 16% return on a $22 million investment." LDNG argues that because GasMark's deficit was approximately $17 million, this translates to a going concern value of $5 million. However, the memo also states that this result is based on projections provided to NYSEG (presumably by GasMark), and expresses concern about the integrity of the projections. Third, a letter from John Barr, the Managing Director of an investment bank retained by NYSEG to undertake a financial and strategic analysis of GasMark as a potential investment opportunity, states that "in or about February 1993, GasMark's equity had a positive value in the merger market as of that time." However, Barr qualifies this statement by claiming that the letter does not constitute or reflect an opinion or valuation analysis, and by emphasizing that Barr performed only a very preliminary analysis and ceased when NYSEG decided not to pursue any potential investment in GasMark.

This evidence does not create a genuine issue of material fact since it is speculative and does not address GasMark's

insolvency on February 28, the date of the payment at issue. <u>See</u> <u>Sandoz v. Fred Wilson Drilling Co. (In the Matter of Emerald Oil</u> <u>Co.)</u>, 695 F.2d 833, 839 (5th Cir. 1983) (noting that the evidence must show insolvency at the time of transfer, and that speculative evidence is not sufficient to rebut the presumption of insolvency).

The trustee relied on the 23% Chapter 7 liquidation estimate for unsecured creditors contained in GasMark's Chapter 11 reorganization plan to prove that LDNG received more than it would have received in a Chapter 7 proceeding. LDNG claims that the trustee did not carry her burden. First, LDNG argues that the liquidation estimate is hearsay. We find this argument unpersuasive. <u>See</u>, <u>e.g.</u>, <u>Maloney-Crawford, Inc. v. Huntco Steel,</u> <u>Inc. (In re Maloney-Crawford, Inc.)</u>, 144 B.R. 531, 535 (Bankr. N.D. Okla. 1992) (using the estimated Chapter 7 liquidation analysis in the debtor's disclosure statement to determine if the creditor received more than under Chapter 7); <u>Knapp v. Applewhite (In re</u> <u>Knapp)</u>, 119 B.R. 285, 288 (Bankr. M.D. Fla. 1990) (same); <u>Chemold</u> <u>Sys., Inc. v. Powers (In re Chemold Sys., Inc.)</u>, 124 B.R. 573, 577 (Bankr. D. Kan. 1991), <u>aff'd</u>, 137 B.R. 971, 975 (D. Kan. 1992)(same); <u>Billings v. Key Bank of Utah (In re Granada, Inc.)</u>, 115 B.R. 702, 708 (Bankr. D. Utah), <u>rev'd on other grounds</u>, 156 B.R. 303 (D. Utah 1990) (same). Second, LDNG argues that there is a fact issue concerning whether GasMark's February 28 payment to LDNG constituted 100% of the money owed to LDNG by GasMark. This argument is irrelevant, since even if the payment was only a

8

portion of the total amount owed, LDNG received a preference as to that portion.  See Palmer Clay Prods. v. Brown, 297 U.S. 227, 229 (1936) (noting that part payment can be a preference because "where the creditor's claim is $10,000, the payment on account $1000, and the distribution in bankruptcy 50 per cent., the creditor to whom the payment on account is made receives $5,500, while another creditor to whom the same amount was owing and no payment on account was made will receive only $5,000.").  The trustee did not fail to carry her burden, and there is no genuine issue of material fact that LDNG received more than Chapter 7 liquidation value.

We affirm summary judgment for the trustee because LDNG did not raise a genuine issue of material fact concerning GasMark's insolvency or concerning whether LDNG received more than Chapter 7 liquidation value.

B

CLAIM AGAINST DEKALB

A creditor can defend against avoidance of an alleged preference payment by proving that the debtor made the payment in the ordinary course of business between the debtor and creditor and according to ordinary business terms, for a debt incurred in the ordinary course between the debtor and creditor.  See 11 U.S.C.A. § 547(c)(2)(B)-(C) (1993).  The parties do not dispute that the debt repaid was incurred in the ordinary course between GasMark and DeKalb.

There is no "precise legal test" for whether payments are in

9

the ordinary course of business. Lovett v. St. Johnsbury Trucking, 931 F.2d 494, 497 (8th Cir. 1991) (quoting In re Fulghum Const. Corp., 872 F.2d 739, 743 (6th Cir. 1989)). Rather, "the analysis focuses on the time within which the debtor ordinarily paid the creditor[] . . . and whether the timing of the payments during the 90-day period reflected 'some consistency' with that practice." Id.

All of the Circuits that have grappled with the meaning of ordinary business terms, except for the Eleventh Circuit, look to "customary terms and conditions used by other parties in the same industry facing the same or similar problems." Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.), 78 F.3d 30, 39 (2d Cir. 1996). Only the Eleventh Circuit finds that the conduct of the debtor and creditor in question is sufficient to establish ordinary business terms. See id.

GasMark contracted with DeKalb for the purchase of natural gas. Their 1990 contract required GasMark to pay DeKalb "by the last day of the month following deliveries, or fifteen (15) days from date of invoicing, whichever comes later, by wire transfer." The parties stipulated to the history of GasMark's payments to DeKalb:

| Production Month | Invoice Date | Check/Wire Amount | Check Date | Check Deposited | Check/Wire Cleared |
|---|---|---|---|---|---|
| 7/90 | | $23,127.80 | 8/31/90 | 9/4/90 (Tue) | 9/6/90 |

10

| 8/90 | 9/20 & 9/21/90 | $228,673.22 | 9/28/90 | 10/1/90 (Mon.) | 10/3/90 |
| 9/90 | 10/19/90 | $128,699.30 | | | 11/5/90 |
| 11/90 | 12/18/90 | $102,381.46 | | | 12/31/90* |
| 6/91 | 7/11/91 | $38,484.84^ | 7/29/91 | 8/5/91 (Mon) | 8/7/91 |
| 10/92 | 11/9/92 | $492,950.92 | | | 12/8/92 |

*$80,727.21 of the 12/31/90 wire was for July 1990 gas; neither DeKalb nor the trustee have produced an invoice for this gas.
^ DeKalb Denver $22,164.84; DeKalb Canada $16,320.00.

The trustee claims that it was not in the ordinary course of business for GasMark to pay DeKalb eight days late: at most, over the course of the relationship, GasMark paid only one or three days late.[2] DeKalb makes two arguments for the payment being in the ordinary course. First, GasMark's payment history shows that deviation from the 1990 contract was the ordinary course between the parties: in addition to payments made later than the contractually mandated time, GasMark made several payments by check when the contract specifically required payment by wire. Second,

_____

[2]According to the terms of the contract, GasMark should have paid for the July 1990 gas by the 8/31/90. GasMark's check was dated 8/31/91, and was received on or before Tuesday, 9/4/90, the date DeKalb deposited it. The trustee argues that the payment was not late or only one day late because of the intervening weekend. [The trustee mistakenly argues that the check was received *Monday*, 9/4/90. The stipulations and the calendar agree that September 4, 1990 was actually a Tuesday. This error does not affect the trustee's argument, since 9/3 was a holiday]. Similarly, according to the terms of the contract, GasMark should have paid for the June 1991 gas by July 31, 1991. GasMark's check was dated 7/29/91, and was received on or before Monday, 9/5/91, the date DeKalb deposited it. The trustee argues that the payment was not late, or only three days late because of the intervening weekend.

11

since the contract required payment by wire and the recipient gains control over the cash when the wire is received, the relevant date for considering whether payment by check is on time is the date that the check clears the bank, the time at which the recipient gains control over the cash. Under this interpretation of the contract, GasMark paid six, three, five, on time, and seven days late, in addition to the eight day late December 8, 1992 payment at issue.

This evidence creates genuine issues of material fact concerning whether the December 8, 1992 payment was in the ordinary course of business between GasMark and DeKalb, requiring reversal of the grant of summary judgment in DeKalb's favor.

Since the trustee moved for partial summary judgment on the ordinary course defense, and is entitled to summary judgment if she can establish that DeKalb can not prove an element of its defense, we must also examine the ordinary business terms prong of the ordinary course defense. The trustee argues that the ordinary business terms prong is objective, looking to the industry in general, while DeKalb argues that the prong is subjective, looking only to the conduct between the debtor and creditor. We need not resolve this conflict, since there exists a genuine issue of material fact concerning whether the December 8 payment was in accordance with ordinary business terms, whether the standard is objective or subjective. If the standard is subjective, the evidence of conduct between the parties raises a genuine issue of

12

material fact for the same reasons we found a fact issue in relation to the ordinary course prong.  If the standard is objective, the record contains conflicting evidence concerning the general practice of the industry.  The trustee testified that, based on her long experience in the gas marketing industry, "the standard practice in the industry is for purchasers . . . to pay timely according to the payment terms and conditions of the contracts with their suppliers . . . ."  In an affidavit submitted in opposition to the trustee's motion for partial summary judgment, attorney Nora Sams stated:

> It is quite common for payments to be made by the gas purchaser and accepted by the seller on dates later than the dates provided in the contracts between the purchasers and sellers.  Purchasers generally base their payments, in part, upon information received from the pipeline companies charged with moving the natural gas. Sellers of natural gas are generally not overly concerned if payments are received from the purchaser after the time period provided in the contract, so long as payments are received within a reasonable time after the gas is delivered to the pipeline.

This conflicting evidence concerning ordinary business practice creates an issue of fact precluding partial summary judgment in favor of the trustee.

AFFIRMED in part, REVERSED in part, and REMANDED.

13