**In re BROTHERS GOURMET COFFEES, INC., et al., Debtors.**

**Brothers Gourmet Coffees, Inc., Plaintiff,**

**v.**

**Armenia Coffee Corporation, a/k/a/ Silver Spoon Gourmet, Defendant.**

**Bankruptcy No. 98–1970.
Adversary No. 00–660–JKF.**

United States Bankruptcy Court, D. Delaware.

Jan. 10, 2002.

Jeffrey Schlerf, Christopher A. Ward, The Bayard Firm, Wilmington, DE, Richard H. Engman, Kirk L. Burns, White & Case, LLP, Miami, FL, Daniel Ginsberg, White & Case, LLP, New York City, for debtors.

Regina A. Iorii, Stephen Jenkins, Ashby & Geddes, Wilmington, DE, for Armenia Coffee.

Dewey Golkin, New York City, United States Trustee, Wilmington, DE.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Chief Judge.

The matter before the Court is a Motion for Summary Judgment filed on behalf of Armenia Coffee Corporation (Armenia) with respect to the trustee's complaint to avoid seven allegedly preferential payments[2] made by Brothers Gourmet Coffees, Inc. (hereinafter, Debtor or Brothers) to Armenia during the 90–day prepetition period. Armenia moves, in the alternative, for partial summary judgment.

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. At the hearing on the Motion for Summary Judgment held on May 17, 2001, Armenia's counsel represented that a wire transfer made within the preference period was not at issue in this summary judgment proceeding.

The issues before us are (1) whether Debtor was insolvent within the meaning of 11 U.S.C. § 547(b)(3) at the time of any of the transfers and (2) even if the Debtor was insolvent when the transfers were made, has Armenia established defenses to any of the transfers under the subsections of 11 U.S.C. § 547(c)(2), namely, that a transfer was

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms....

Section 547(g) outlines the burden of proof for both subsections (b) and (c):

For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

■ The burden of proof, however, under § 547(b)(3) is entitled to the rebuttable presumption outlined in § 547(f):

For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

We look first to how the presumption may be affected by a motion for summary judgment. *Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*, 158 F.3d 312 (5th Cir.1998), explains how the general rule regarding a motion for summary judgment interacts with the presumption affecting the burden of proof under § 547(b)(3):

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." R.Bankr.P. 7056 (stating that Fed.R.Civ.P. 56(c) applies in adversary proceedings); Fed.R.Civ.P. 56(c); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265.... (1986).

Insolvency is a "financial condition such that the sum of [the] entity's debts is greater than all of [its] property, at a fair valuation...." 11 U.S.C.A. § 101(32) (1993). A debtor is presumed insolvent on and during the 90 days before filing for bankruptcy.... The party seeking to rebut the presumption must introduce some evidence to show that the debtor was solvent *at the time of the transfer* .... Summary judgment in favor of the trustee is appropriate when the party seeking to rebut the presumption fails... or when there is no genuine issue of material fact concerning insolvency and the trustee is entitled to judgment as a matter of law....

158 F.3d at 315 (emphasis in original).

■ Here, on the issue of insolvency, Armenia must rebut the presumption by showing that there are no material facts in dispute on the issue and that Debtor was solvent at the times of the transfers. Armenia offers the opinion of Dr. Samuel J. Kursh,[3] who used the income and market methodologies of a prior evaluator, Corporate Valuation Advisors, hired as a consultant by Debtor,[4] to arrive at his

---

**3.** Debtor has not challenged the expert witness credentials of Dr. Kursh.

**4.** Docket No. 55, Opening Brief of Armenia Coffee in Support of Its Motion for Summary Judgment or, Alternatively, for Partial Sum-

conclusions regarding solvency of Debtor as of August 27, 1998, the date Debtor filed its petition.[5] Dr. Kursh opines "within a reasonable degree of economic certainty, that Brothers was solvent on August 27, 1998." [6]

Debtor offers portions of the Affidavit of Barry Bilmes, its Chief Financial Officer, citations to its SEC Form 10–Q, and references to its Disclosure Statement [7] to argue that it was insolvent at the time of the transfers. Although Armenia argues that this evidence does not satisfy Debtor's burden of persuasion because, unlike Armenia, Debtor has proffered no expert testimony,[8] Debtor has offered its SEC Form 10–Q, prepared two months prior to filing, listing the assets at $31.896 million,[9] and the affidavit of its CFO stating that despite aggressive marketing attempts, it received no binding offers. Debtor argues that this indicates that it received no bid in excess of its liabilities.[10] Debtor's evidence is enough to establish a material fact in dispute concerning its financial condition and, therefore, to defeat a motion for summary judgment.

Both Armenia and Debtor cite *Travellers International AG v. Trans World Airlines*, 134 F.3d 188 (3rd Cir.), *cert. denied*, 523 U.S. 1138, 118 S.Ct. 1843, 140 L.Ed.2d 1093 (1998), regarding appropriate meth-

---

mary Judgment (Armenia's Opening Brief), page 7. All docket references are to the adversary docket.

5. CVA valued Debtor approximately 14 months prior to its filing chapter 11. Dr. Kursh finds CVA's methodology "generally acceptable" and updated it as of August 27, 1998, based on documents produced in this litigation and independent research. Dr. Kursh explains how he viewed and carried out his assignment: "Rather than determining Brothers' fair market value as of August 27, 1998, this exercise determines whether this value would exceed the value of Brothers' liabilities on that date." Page 3 of Exhibit I, Armenia's Opening Brief.

6. Neither party disputes that the liabilities of the Debtor were $41 million at the operative time. See footnote 3 on page 3 of Brothers Gourmet Coffees' Statement of Disputed Issues of Fact, Docket No. 64, and the fourth full paragraph of page 10 of Dr. Kursh's report, Docket No. 55, Exhibit I. Attorney Jenkins for Armenia referred to the $41 million figure in oral argument on May 17, 2001.

7. Docket No. 64, Statement of Disputed Issues of Fact of Plaintiff, Brothers Gourmet Coffees, Inc. (Debtor's Statement of Disputed Issues of Fact), pages 3 and 4.

8. Attorney Jenkins' argument at hearing on May 17, 2001, found at Transcript of Motion for Summary Judgment, Docket No. 71, page 19.

9. Docket No. 60, Debtor's Appendix of Certain Materials Cited in Answering Brief of Brothers Gourmet Coffees, Inc. to Armenia Coffee Corporation's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment (Debtor's Appendix), at B–0659 to B–0680, Form 10–Q Quarterly Report to the SEC for the period ended June 26, 1998. The Debtor's Condensed Consolidated Balance Sheets, which is part of the 10–Q submission, states at Note 5: "As a result of the Company's estimated shortfalls of cash flow, the Company wrote-off its good will in the amount of $50,251[,000] in the quarter ended June 26, 1998." *Id.* at B–0666.

10. Docket No. 64, Statement of Disputed Issues of Fact, page 3. This statement is not a direct quote rather it is a paraphrase from the Affidavit of Barry Bilmes in Opposition to Armenia Coffee Corporation's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, page 2, paragraph 6, which actually reads "The concerted and aggressive marketing effort conducted by Schroeder & Co. and Brothers' management resulted in Brothers receiving numerous expressions of interest. Brothers had substantial negotiations, including the conducting of the due diligence, with several entities including The Proctor & Gamble Company and Green Mountain Tea and Coffee, Inc. Brothers, however, received no binding offers for its business." Docket No. 60 at B–0312.

ods of valuation of both assets and liabilities to be used in a Chapter 11. *Travellers* used a "going concern" analysis to determine fair valuation of debtor's assets when debtor was not liquidating and debtor's insolvency as of the date of a transfer was at issue. The court stated:

> Whether a company is insolvent under the Bankruptcy Code is considered a mixed question of law and fact. *See Moody v. Security Pacific Business Credit,* 971 F.2d 1056, 1063 (3d Cir. 1992). . . .
>
> The first question we must answer is how to measure properly a "fair valuation" of [debtor's] assets according to 11 U.S.C. § 101(32)(A). Because liquidation in bankruptcy was not clearly imminent on the date of the challenged transfer, we concern ourselves with how to achieve a fair valuation of [debtor's] assets on a "going concern" basis.
>
> *Travellers,* 134 F.3d at 193.

■ In the case at bench, the evidence in support of and in opposition to the motion for summary judgment is so varied that material facts are in dispute as to whether bankruptcy was imminent on the dates of the transfers. With the evidence presented in these proceedings, we cannot determine whether the liquidation or going concern valuation method will apply. Debtor, of course, has the rebuttable presumption of insolvency in its favor. Armenia, however, has introduced expert opinion that the presumption may be rebutted. However, Armenia's evidence is not uncontested. Debtor ultimately bears the burden of persuading this court that it was, in fact, insolvent on the dates of the transfers.

Armenia's expert used a "going concern" method for valuation which led him to conclude that Debtor was not insolvent in the preference period. Debtor, however, used a liquidation method of valuation which led it to conclude that it was insolvent. In the face of two differing methods used for the business evaluations, which suggest opposite conclusions on the issue of insolvency, summary judgment cannot be granted. The court is asked to compare apples to oranges. For reasons which follow, however, we need not set an evidentiary hearing.

Regarding the § 547(c)(2) issues, we must examine evidence proffered by Armenia in support of its Motion for Summary Judgment or Partial Summary Judgment to show that the standards of § 547(c)(2)(B) (ordinary course of business of debtor and transferee) or § 547(c)(2)(C) (ordinary business terms) have been met. Neither party asserts that § 547(c)(2)(A) (debt incurred in ordinary course of business) has been met. We find that there are no material facts in dispute as to the remaining issues.

■ The first dispute revolves around Debtor's argument that Armenia stepped up its collection efforts in the preference period such that the payments were not made in the ordinary course of business as is required to satisfy § 547(c)(2)(B). The record establishes that prior to the preference period, Armenia made calls to Debtor concerning payment related to 50 percent of its orders, but, during the preference period, called regarding five out of seven orders.[11] We do not find the change to be material on the facts of this case. The chart of payments included with the Affidavit of Arlene Zimmer, Docket No. 55, Exhibit A, indicates that of the 107 pre-preference payments several were made after three phone calls. The preference

---

11. Docket No. 64, Debtor's Statement of Disputed Issues of Fact, page 11. We note that the parties admit having had 107 pre-preference period invoiced transactions.

period payments were made after no, one or two calls. Thus, the record establishes that the parties had a 3½ year business history before the preference period,[12] during which calls to aid in collection of about 107 invoices fluctuated. The record shows nothing unusual about the course of business between the parties in the preference period as compared with the prior three years.

Additionally, Debtor argues [13] that "the Preference Period Payment made on June 5, 1998 was made 32 days after the 'due date'[ ] whereas, there was not a single (0.00%) Pre–Preference Payment made 32 or more days after the 'due date'...." However, three deliveries made and invoiced on March 12, 1996, and, per the invoice, due 30 days later, were paid on May 13, 1996.[14] Accepting the 30–day payment expectation testified to by Paul Fisher,[15] we find that the June 5, 1998, payment was more than 32 days past invoice due date of April 11. In addition, there were several payments made 31 days past the due dates. Further, Debtor admits [16] that the average time between invoice due date and payment date in the pre-preference period was approximately

32.69 days. Debtor admits that the average time between invoice due date and payment date in the preference period, exclusive of the wire transfer which is not at issue for summary judgment purposes, was approximately 33.71 days.[17] The difference of one day is not material on the facts of this case.

Reference to the Affidavit of Arlene Zimmer, an administrative and accounting manager with Armenia, yields a slightly different version of the facts but a similar conclusion regarding late payments. She indicates: "The due dates on the invoices that Armenia issued were either 30 days from the date that Brothers approved the coffee or 30 days from the date of delivery order." [18] Her chart shows that the preference period payments were made 8 to 29 days after due date. Pre-preference payments were made 0 to 31 days late, including four payments that were 31 days late. Payments in the preference period were within the range of payments made in the pre-preference period. Armenia has met its burden conclusively on the issue of the test outlined in § 547(c)(2)(B).

---

**12.** Docket No. 63, Reply Brief of Armenia Coffee Corporation in Support of Its Motion for Summary Judgement, or, Alternatively, for Partial Summary Judgment (Armenia's Reply Brief), page 11, and Docket No. 55, Affidavit of Paul Fisher, Exhibit E, page 6.

**13.** Docket No. 64, Debtor's Statement of Disputed Issues of Fact, page 11.

**14.** Although Debtor lists these payments as 52 days after invoice in its Responses to Defendant's First Request for Admissions found at Docket No. 55, Exhibit C of Armenia's Opening Brief, it indicates the same dates for delivery and invoicing, March 12, 1996, and for payment, May 13, 1996, that Armenia indicates in its Exhibit C chart for these orders. There are 62 days between delivery, or invoicing and payment. Thus, the payment was 32 days past the due date of April 11, 1996.

**15.** Docket No. 55, Armenia's Opening Brief, Exhibit E, page 1. This expert in coffee industry practices opines in an affidavit that "The credit terms between Brothers and Armenia generally remained consistent throughout their relationship. Payment terms were essentially the same on all contracts: 30 days after delivery order. This is a standard term in the green coffee industry."

**16.** Docket No. 55, Armenia's Opening Brief, Exhibit B, Plaintiff's Responses to Defendant's Third Request for Admissions, page 2, Answers to Request No. 1.

**17.** *Ibid.,* Answer to Request No. 2.

**18.** Docket No. 55, Armenia's Opening Brief at Exhibit A, at 2, paragraph 5 (Affidavit of Arlene Zimmer).

■ There are two applicable Third Circuit cases which speak to § 547(c)(2)(C) issues: *In re Molded Acoustical Products, Inc.* 18 F.3d 217 (3d Cir.1994), and *In re First Jersey Securities, Inc.* 180 F.3d 504 (3d Cir.1999).[19] Concerning the § 547(c)(2)(C) analysis, Debtor contends that Armenia "has not provided any specific data regarding the ordinary business terms in the green coffee industry"[20] and commends to us the case of *In re Schwinn Bicycle Co.*, 205 B.R. 557 (Bankr.N.D.Ill. 1997), to say that general testimony unsupported by any specific data is insufficient to prove ordinary business terms. More directly, *Schwinn* says:

> Evidence of the creditor's dealings with other customers is insufficient to prove "ordinary business terms".... General testimony by an employee of the defendant, unsupported by any specific data, is insufficient to prove "ordinary business terms."

205 B.R. at 573 (citations omitted). The facts before us are not apposite to those in *Schwinn*. Armenia's evidence was not general testimony by an employee, nor did it concern only Armenia's dealings with other customers. Paul Fisher neither is, nor was, an employee of Armenia. He is an expert whose opinion was offered as to the experience of payment for orders in the green coffee industry.[21] Paul Fisher indicated that he was overseer of invoicing and credit operations for a competitor of Debtor, Tristao Trading.[22] He opined thus:

> Based on my experience in the industry, both as Tristao's president and as a green (sic) Coffee Association arbitrator, it is my opinion that the payments made by check to Brothers during the preference period ... are not unusual for the green coffee industry.[23]

Debtor produced no evidence to refute his opinion, and summary judgment will be granted on the § 547(c) issues. Thus, whether or not Debtor was insolvent on the dates of the allegedly preferential transfers need not be determined because, even if it was, Armenia has established its defenses.[24]

An appropriate order will be entered.

### ORDER

AND NOW, this 10th day of January, 2002, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that Armenia's Motion for Summary Judgement is **GRANTED** to the effect that the Trustee may not avoid the seven preference period payments made by check and corresponding to Invoice Numbers SS–2010, SS–2058, SS–2091, SS–2117, SS–2112, SS–2178, and SS–2170.

19. Armenia also cites *J.P. Fyfe v. Bradco Supply Corp.* 891 F.2d 66 (3rd Cir.1989). However, the appellate court there found that the allegedly preferential payments to the creditor were made prepetition after the debtor revealed its financial difficulties to the creditor who altered its normal payment terms with debtor because of the revelations.

20. Docket No. 59, Answering Brief of Brothers Gourmet Coffees, Inc. to Armenia Coffee Corporation's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment (Debtor's Answering Brief), page 22.

21. Brothers has not challenged the credentials of Paul Fisher as an expert.

22. Docket No. 60, Appendix of Certain Materials Cited in Debtor's Answering Brief, B–0701, paragraph 3.

23. Docket No. 60, Appendix of Certain Materials Cited in Debtor's Answering Brief, B–0706, paragraph 12.

24. We addressed the issue of deciding solvency by way of summary judgment because the same issue may arise in a number of pending adversary actions in this case.

It is **FURTHER ORDERED** that a status conference as to the remaining payment made by wire transfer will be held on January 28, 2002, at 10:30 AM in the Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware.