In re ENRON CORPORATION,
et al., Debtors.

Official Employment–Related Issues
Committee of Enron Corp., et
al., Plaintiff,

v.

John D. Arnold, et al., Defendants.

Bankruptcy No. 01–16034–AJG.
Adversary No. 03–3522.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Nov. 23, 2004.

Mark E. Maney, McClain, Leppert and Maney, Houston, TX, for plaintiff.

Cynthia Johnson Rerko, Holland O'Neil, Gardere, Wynne, Sewell, LLP, Dallas, TX, Mark A. Brandoff, Mark A. Brandoff, P.C., Jericho, NY, Thomas D. Goldberg, Day, Berry et al., Stanford, CT, Keith B. Middleton, Rucker Middleton LLP, Houston, TX, Michael T. Dawkins, Baker, Donelson et al., Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

On March 28, 2003, the Official Employment–Related Issues Committee of Enron Corporation (the "Employment Committee") filed this adversary proceeding seeking to recover pre-petition payments made to the defendants from a trust established by Enron North America ("Enron N.A."). The complaint alleges (1) that each payment was a voidable post-petition transfer under 11 U.S.C. §§ 549 and 550 [1]; (2) that each payment was a voidable preference under 11 U.S.C. §§ 547 and 550; and (3) that each payment was a voidable fraudulent transfer under 11 U.S.C. §§ 544(b), 548 and 550, and applicable state law.

John D. Arnold, and several other defendants, move for summary judgment dismissing the complaint. The defendants contend that the payments do not involve the transfer of an interest of the debtor in property. See doc. nos. 224, 226, 263 and 241.[2] The Employment Committee opposes the motions. The court conducted a hearing on the motions on August 31, 2004.

Arnold, and several other defendants, also move for summary judgment on the issue of insolvency. The defendants contend that the Employment Committee cannot prove insolvency, an element necessary for recovery under any of the avoidance claims. See doc. nos. 121, 234, 236, 240, 242, 263, 266, and 288.[3] In response, the

1. Judge William Greendyke granted summary judgment to all defendants on the issue of avoidable post-petition transfers. *See* Judge Greendyke's April 19, 2004, memorandum of decision and order.

2. Tab 5 of Arnold's exhibit notebook contains a list of the parties who joined in Arnold's motion for summary judgment on the transfer of interest issue. The list includes a notation that Frank Hayden and James E. Schwieger joined. However, the court notes that the

docket does not show that Hayden has filed any joinder or motion related to Arnold's summary judgment motion, and Schwieger's filing at docket no. 233 does not indicate which summary judgment motion he joins— Arnold's summary judgment motion on insolvency, his summary judgment motion on transfer of interest, or both.

3. One defendant, James E. Schwieger, filed a motion at docket no. 233. Schwieger does not indicate which summary judgment mo-

Employment Committee filed a motion under Fed.R.Civ.P. 56(f), made applicable by Bankruptcy Rule 7056, for a continuance of the motion for summary judgment in order to conduct discovery prior to responding to the motions. The record does not reflect a resolution of the Employment Committee's motion prior to the assignment of Judge Felsenthal to this adversary proceeding. At a status conference on July 13, 2004, the court gave the parties twenty days to file a motion on the insolvency issue or join the Arnold motion. The court then allowed the Employment Committee twenty days to respond. The Employment Committee did not file a specific response to the summary judgment motions on insolvency. The court held a hearing on the motions on August 31, 2004.

Even though the Employment Committee did not respond to the insolvency summary judgment motions, on July 16, 2004, the Employment Committee filed a motion for partial summary judgment on its preference claim under § 547 against all defendants except Stuart Rexrode. See doc. no. 228. In that motion, the Employment Committee in effect cross-moves for summary judgment on the presumption of insolvency imposed by §§ 547(b)(3) and 547(f).

Also in its motion, the Employment Committee seeks summary judgment on each element of its preference claim brought pursuant to § 547(b). Furthermore, the Employment Committee seeks summary judgment on the defendants' asserted affirmative defenses of contemporaneous exchange for new value and ordinary course of business pursuant to 11 U.S.C. §§ 547(c)(1) and (c)(2). Most of the defendants filed responses opposing the Employment Committee's motion for sum-

mary judgment. See doc. nos. 252, 253, 254, 255, 258, 262, 264, 265, 267, 268, 272, 302, and 304. The court conducted a hearing on the Employment Committee's motion on September 30, 2004.

## Summary Judgment Standards

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). On a summary judgment motion, the inference to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A factual dispute bars summary judgment only when the disputed fact is determinative under governing law. *Id.* at 250, 106 S.Ct. 2505.

The movant bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

tion he joins—Arnold's summary judgment motion on insolvency, his summary judgment motion on transfer of interest, or both.

If the court concludes that summary judgment is inappropriate, it will merely enter an order denying the motion. Material fact disputes and competing factual inferences need not be discussed in an order denying a motion, as those factual disputes will necessarily be addressed at trial.

### Statutory Language

Section 547(b) states that:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if-

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Section 548(a) provides:

(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily-

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

. . . .

11 U.S.C. § 548(a)(1).

Texas law, made applicable by § 544(b), defines "asset" to be "property of a debtor." Tex. Bus. & Com.Code § 24.002(2).

### Transfer of an Interest of Debtor

■ In a prior memorandum opinion entered April 19, 2004, doc. no. 203, on a motion for summary judgment concerning whether the transfers had been made post-bankruptcy petition, this court found no genuine issues of material facts concerning the following:

The defendants worked as upper level traders and management of Enron Corp.'s

trading division, Enron N.A.[4] In the immediate weeks preceding the filing of Enron's bankruptcy petitions, Enron determined to make payments to the defendants who were viewed as important to the business. To assure the availability of funds for the payments, on November 16, 2001, Enron established a trust with Wachovia Bank, N.A., as trustee. On November 20, 2001, Enron funded the trust with $50 million.

Enron offered the payment program to the defendants. On November 29, 2001, Enron provided a payment schedule to Wachovia identifying the recipients of the payments and the amounts of their respective payments. On November 30, 2001, Wachovia issued checks from the trust to all but two of the defendants and set aside funds to cover applicable tax withholdings. In total, the defendants received $44,354,999 in direct payments and tax payments made on their behalf.

On December 2, 2001, Enron Corp. and Enron N.A. filed petitions for relief under Chapter 11 of the Bankruptcy Code.

The defendants contend that the payments do not constitute a transfer of "an interest of the debtor in property" as required by 11 U.S.C. §§ 547(b) and 548(a). Rather, they argue, relying on this court's memorandum opinion entered April 19, 2004, that Wachovia as trustee, and not Enron, transferred property to the defendants. The Employment Committee responds that the memorandum opinion establishes that Enron made a transfer to the trust for the benefit of the defendants. But the defendants reply that the Employment Committee did not premise its complaint on avoiding the transfer by Enron to the trust, but instead focused on the payment to the defendants themselves.

■ The court considers "an interest of the debtor in property" to be synonymous with the term "property of the estate" under 11 U.S.C. § 541. *Matter of Criswell,* 102 F.3d 1411, 1416 (5th Cir.1997). There is no genuine issue of material fact that Enron transferred funds to the trust. On the date of transfer, had a bankruptcy petition been filed, the funds would have been property of the estate. There is no genuine issue of material fact that Enron controlled the funds at the time of transfer. Enron therefore transferred an interest of the debtor in property to the trust. *See Southmark Corp. v. Grosz (In re Southmark Corp.),* 49 F.3d 1111, 1116–17 (5th Cir.1995).

The defendants contend, however, that the Employment Committee, in its complaint, seeks to avoid the transfer from the trust to the defendants. The defendants read the complaint too narrowly. In the preference and fraudulent conveyances claims for relief, the Employment Committee seeks to recover a judgment under § 550 after avoiding a transfer under §§ 547, 548 or 544(b). The targeted judgment under § 550 is the amount of the payment to each defendant. To obtain that judgment, the Employment Committee must successfully avoid a transfer of property. The complaint puts the defendants on notice that the Employment Committee will seek to establish the elements of each avoidance statute to obtain a money judgment for the amount of the payments they each received.

The court, in its memorandum opinion entered April 19, 2004, explained that when the trust was funded and the beneficiaries and payment amounts identified, "there was no going back." Memorandum of Decision, at p. 7. The defendants, as

---

**4.** In this memorandum opinion, the court, at times, refers to Enron Corp. and Enron N.A. as Enron.

beneficiaries of the trust, were entitled to their payments from the trust. The trustee had no authority other than to make the payments to the beneficiaries. Enron could not access trust funds earmarked for the beneficiaries, eliminate a beneficiary, reduce the amount payable to a beneficiary or delay any payment to a beneficiary. "[A]s of November 29, 2001, the transfer from Enron to the Trust and its beneficiaries was complete, and all conditions precedent for payment of the Trust funds to Defendants were satisfied." Memorandum of Decision, April 19, 2004, at p. 8. Accordingly, there is also no genuine issue of material fact that Enron transferred the funds to the trust for the benefit of the trust's beneficiaries, the defendants.

In its motion, the Employment Committee seeks a partial summary judgment that the transfer was for the benefit of the defendants. The committee is entitled to that partial determination. The committee did not, however, move for a partial summary judgment that the transfers were for the "benefit of a creditor." 11 U.S.C. § 547(b)(1). As a result, the court defers for trial the determination of whether the defendants were creditors.

The Employment Committee also contends that Enron retained an interest in the residual of the trust. The court partially addressed that issue in its memorandum opinion entered April 19, 2004. As there is no genuine issue of material fact that Enron transferred an interest in property to the trust, the court need not consider that issue on this motion.

The defendants rely on case law that contains facts distinguishable from the facts here. The cases hold that property that the debtor holds in trust for another party is not property of the debtor's estate nor property of the debtor. *See Begier v. Internal Revenue Service,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990); *Jenkins*

*v. Chase Home Mortgage Corp. (In re Maple Mortgage, Inc.),* 81 F.3d 592 (5th Cir.1996). The facts here do not involve property that Enron N.A. was holding in trust for another entity. Therefore, the cases on which the defendants rely do not directly support their argument that the transfers from the trust to make the bonus payments were not transfers of property of the estate.

The defendants argue that the Employment Committee lacks standing to avoid any transfer of Enron to the trust, even if the Employment Committee meets the other requirements of §§ 544(b), 547 or 548. Several defendants have filed a motion for summary judgment raising the issue of the Employment Committee's standing to prosecute this litigation. See doc. nos. 235 and 239. The court separately addresses the standing issue in its ruling on that motion. For purposes of this motion, suffice it to say that the Employment Committee either has standing to prosecute the claims against these defendants to recover the payments made to them under the avoidance provisions of Chapter 5 of the Bankruptcy Code, or it does not. But the determination of that issue does not break down on how the payments to the defendants were implemented and/or accomplished.

### Insolvency

■ In their motions, the defendants contend that the Employment Committee cannot establish that Enron N.A. was insolvent at the time of the transfers. In its motion for partial summary judgment, the Employment Committee counters that the defendants cannot rebut the presumption of insolvency for the preference claim.

■ The Bankruptcy Code defines insolvency as a "financial condition such that the sum of [the] entity's debts is greater than all of [its] property, at a fair valuation

..." 11 U.S.C. § 101(32). Texas law parallels the Code's approach to insolvency. *See* Tex. Bus. & Com.Code § 24.003. Under § 547, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). A defendant may seek to rebut the § 547 presumption of insolvency by introducing "some evidence to show that the debtor was solvent *at the time of the transfer;* mere speculative evidence of insolvency is not enough." *GasMark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.,* 158 F.3d 312, 315 (5th Cir.1998) (emphasis in original). There is no presumption of insolvency under § 548 or Texas law.

The defendants argue that their summary judgment evidence rebuts the presumption of insolvency relied on by the Employment Committee; that the Employment Committee has presented no evidence that Enron N.A. was insolvent at the time the defendants received their payments; and that they have presented evidence of Enron N.A.'s solvency at the relevant times.

 Enron N.A. attached an Exhibit A to its bankruptcy petition which reports total assets exceeding total liabilities. But the exhibit footnotes the liabilities, stating "[t]his amount does not reflect off-balance sheet and contingent obligations." The Code's definition of insolvency applies a balance sheet test, which requires the court to engage in the "fair valuation" of the debts and property shown on the debtor's balance sheet. But a fair value might not be reflected by what the debtor reports on its books. The court must determine the debts that would have to be paid in a market analysis. *See Sherman v. FSC Realty LLC (In re Brentwood Lexford Partners, LLC),* 292 B.R. 255, 268 (Bankr.N.D.Tex.2003); *In re Consol. Capi-*

*tal Equities Corp.,* 143 B.R. 80, 87–90 (Bankr.N.D.Tex.1992).

Enron N.A.'s Statement of Financial Affairs lists total assets of $28.4 billion and total liabilities of $20.6 billion. But that document contains a warning: "ASSETS ARE SHOWN ABOVE AT NET BOOK VALUE AND, THUS, AMOUNTS ULTIMATELY REALIZED WILL VARY FROM NET BOOK VALUE AND SUCH VARIANCE MAY BE MATERIAL." The court must determine the value of the debtor's assets by estimating what the assets would realize if sold in a prudent manner in the then current market conditions. That value may not be equivalent to what is reported on the debtor's books. *Brentwood Lexford Partners,* 292 B.R. at 268. If the Statement of Financial Affairs derives from the book value, it may not reflect the fair market value, notwithstanding any instructions on completing the schedules.

The defendants refer the court to testimony in the underlying Enron N.A. case on a motion to sell the wholesale trading business. Jeffrey McMahon, the Enron CFO, testified that at the time of the filing of the bankruptcy petitions, Enron N.A. had a book value of $7 billion. The court found that the sale had a present value to Enron N.A. of between $1 and $2 billion.

The defendants refer to portions of the Enron disclosure statement reporting that Enron N.A. had liabilities of approximately $4.8 billion on the petition date. The disclosure statement also reports special purpose entity debt of $8.7 billion on the petition. Invoking an examiner's report, the defendants contend that the $8.7 billion debt will be substantially reduced by avoidance actions. The court cannot assess the amount of likely liabilities by predicating the outcome of litigation on this summary judgment record. The defendants invoke the value placed on the

assets in the schedules, including possible recovery from litigation and from inter-company claims by Enron N.A. Again, on this summary judgment record the court cannot assess the value, if any, of causes of action and inter-company claims. Rather, accepting the scheduled value of assets for the purpose of analyzing the disclosure statement, the face amount of the liabilities reported in the disclosure statement compared to that value reflects a fact issue concerning insolvency. In addition, the Employment Committee observes that the plan of reorganization, confirmed by the bankruptcy court, projects a twenty cent on the dollar return to unsecured creditors.

The schedules and statement of financial affairs alone may not rebut the insolvency presumption of § 547(f). *See Enron Corp. v. Arthur Andersen, LLP (In re Enron Corp.)*, adv. proc. no. 02–3119 A (Bankr. S.D.N.Y. Oct. 28, 2004), filed as attachment to doc. no. 335 in this adversary proceeding (also discussing use of Form 10–Q). In this case, the schedules and statement of financial affairs themselves contain disclaimers. But the defendants have produced additional summary judgment evidence regarding the value of the wholesale trading business when sold, the contingent nature of some liability and the potential recovery of assets to be factored into the analysis for the insolvency of Enron N.A.

■ The summary judgment evidence rebuts the presumption of insolvency under § 547, but the summary judgment evidence also establishes that there are genuine issues of material fact regarding the insolvency of Enron N.A. on the transfer dates under §§ 547, 548 and Texas law.

The Employment Committee argues that the court should not decide the insolvency summary judgment motions until the parties have completed discovery. The Employment Committee asserts that it, and the defendants, need to review a report being prepared by Ernst & Young in the underlying Enron bankruptcy cases. The defendants objected that the Employment Committee had not filed an affidavit in support of its Rule 56(f) motion. As a result, the defendants argue that the court cannot assess the efforts made by the Employment Committee to obtain discovery and the problems encountered by the Employment Committee in the discovery process. Regardless, however, the defendants maintain the Employment Committee should have had sufficient time to obtain an expert report to submit as summary judgment evidence on the issue of the insolvency of Enron N.A. The arguments concerning insolvency discovery implicate the administration of the underlying bankruptcy cases. The management of those cases is not before this court.

The Employment Committee actually raised its Rule 56(f) continuance request in October 2003. This court then proceeded to address other motions, as the court and the parties structured the management of this and related adversary proceedings. On June 1, 2004, the Fifth Circuit Judicial Council assigned Judge Felsenthal to this adversary proceeding. Since then, this court has entered comprehensive scheduling orders governing the conduct and timing of discovery. As this court has concluded that there are genuine issues of material fact concerning insolvency, the scheduling orders assure a full opportunity for discovery prior to trial of the insolvency issue.

### Transfers made for or on account of an antecedent debt

■ The Employment Committee moves for partial summary judgment that the transfers were made for or on account of an antecedent debt owed by the debtor before the transfer was made. 11 U.S.C.

§ 547(b)(2). The committee relies on the court's opinion entered May 24, 2004, which states that "Enron [N.A.]'s obligation to pay performance bonuses to each defendant in two equal installments in January and February, 2002 was *incurred* as of November 17, 2001—*before* the date of the transfers in question." Memorandum of Decision, May 24, 2004, at p. 11.

The defendants raise genuine issues of material fact as to whether the transfer was on account of an antecedent debt. The defendants argue that while the court concluded that there was an antecedent debt, the court did not conclude that any *transfer was made on account of* that antecedent debt. The Employment Committee asserts that the alleged transfers were made in connection with a Confidential Interoffice Memorandum providing the terms of the performance bonus, dated November 29, 2001. The November 29, 2001, memorandum also states that it replaces and supercedes the November 17, 2001, memorandum which established the bonus payments that were scheduled for January and February, 2002. The November 29, 2001, memorandum changed that payment schedule to make the bonus payments immediately payable upon execution of the agreement. This, the defendants argue, establishes that the obligation created by the November 29th memorandum cannot be characterized as antecedent debt.

There is a genuine issue of fact as to when the defendants executed the memorandum and when they received their payments. The Employment Committee has not offered any summary judgment evidence on the timing of the execution of each of the agreements and the payments.

The court finds that there is a genuine issue of material fact related to this element of the Employment Committee's preference claims that precludes summary judgment.

### Transfers made on or within 90 days before the date of the filing of the petition

The Employment Committee moves for partial summary judgment that the transfers had been made within 90 days before the date of the Enron bankruptcy petitions. 11 U.S.C. § 547(b)(4)(A). The committee states that the defendants received checks dated November 30, 2001, and that because Enron N.A. filed its bankruptcy petition on December 2, 2001, the transfers to the defendants occurred within the ninety days before the bankruptcy filing. The committee also refers to the court's April 19, 2004, opinion which states that the relevant transfer occurred within the ninety-day period. The defendants argue that the Employment Committee has failed to provide any summary judgment evidence to prove that there were transfers by the debtor to the defendants made within ninety days of bankruptcy or to show that the parties have no dispute over this element.

The court has previously held that the relevant transfers occurred within the ninety days before the filing of the petition. The defendants have not produce summary judgment evidence to suggest that the court previously erred. There is no genuine issue of material fact that the defendants received transfers within the ninety days before the date of the filing of the petition.

### Did the defendants receive more than they would have received if the case were a case under chapter 7 of this title?

■ The Employment Committee moves for partial summary judgment that the defendants received more from the transfers than they would have received if paid under a Chapter 7 case. 11 U.S.C.

§ 547(b)(5). The committee argues that under Enron N.A.'s confirmed plan of reorganization, unsecured creditors will receive an estimated 20.1 cents on the dollar. In its Findings of Fact and Conclusions of Law Confirming Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors, the United States Bankruptcy Court for the Southern District of New York, where Enron N.A.'s bankruptcy case is pending, found that Enron N.A. creditors' recovery in a Chapter 7 liquidation would be only 17.4% while their recovery under a Chapter 11 plan would be 20.1%.

The defendants assert that the Employment Committee has the burden of proving this element with respect to every individual defendant and that it has not provided any supporting affidavits or documentation. The defendants also assert that had they provided uncompensated post-petition value to the estate, they would have been entitled to payment for that value as a priority administrative expense; and they would have been paid in full. The defendants further argue that a Chapter 7 trustee would have obtained authority from the bankruptcy court to operate Enron's wholesale trading business, pending the sale of the business to UBS Warburg, and would have obtained approval to assume the November 29, 2001, memorandum agreements.

There is a genuine issue of material fact as to whether the defendants received more than they would have received in a Chapter 7 case.

### Affirmative Defenses

The Employment Committee seeks summary judgment against the defendants on the affirmative defenses they assert pursuant to 11 U.S.C. §§ 547(c)(1) and (c)(2), which provide:

The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

11 U.S.C. § 547(c).

### *New Value*

■ The Employment Committee argues that the contractual documents related to the payment of the performance bonus state that the payments were for their year 2001 performance and not for new value to be provided in the future. The Employment Committee asserts that the contracts show that the intent of the parties was not to have a contemporaneous exchange for new value.

The defendants respond that the payments were not made to satisfy Enron N.A.'s obligations under the November 17, 2001, memorandum, but to satisfy its obligations under the November 29, 2001, memorandum.[5] The defendants further

5. Defendants Matthew Motley and the "Portland Arnold group" (except Timothy Heizenrader) respond that they have not located a November 17, 2001, memorandum agreement and do not recall reviewing or executing such an agreement.

respond that, pursuant to the November 29, 2001, memorandum, the creation of the debt and the right to payment were substantially contemporaneous transactions and that the intent of the debtor and creditor is a question of fact. The defendants argue that statements made in the meetings of the Compensation and Management Development Committee of Enron's board of directors from November 16 and 29, 2001, as well as in meetings of Enron's board of directors on November 25 and 28, 2001, raise doubt regarding the Employment Committee's claim that the intent of the bonus contract is clear. The defendants point to the minutes from those meetings to argue that the intent of the bonus payments was to ensure the retention of key personnel.

The defendants raise an issue of fact regarding the intent of the transfer and the meaning of the contract which precludes summary judgment in favor of the Employment Committee regarding this affirmative defense.

The Employment Committee, without waiving its argument that the payments to the defendants were not intended to be exchanges for new value, states that it will not dispute that 89/90ths of the bonus amount paid to all defendants could be considered new value. The Employment Committee again turns to the court's opinion of May 24, 2004, which states that the defendants "contend they provided new value to the debtor by agreeing to remain at Enron for 90 days—through February 28, 2002. Enron, however, filed for bankruptcy on December 2, 2001, meaning that out of the 90 days of 'value' Defendants provided to Enron, 89 of those days fell post-petition." Memorandum of Decision, May 24, 2004, at p. 8.

The defendants argue that the Employment Committee misses the point of what "value" was to be provided by the defen-

dants. The defendants contend that the value given to Enron N.A. was the promise from the defendants to remain employed with Enron N.A. for ninety days and state that Enron N.A. received that immediate value in exchange for its payment to the defendants. The court observed in its opinion entered May 24, 2004, that "there remains a genuine issue of fact regarding whether there was any correlation between the value provided and the amount paid. It is not enough for Defendants to simply state that the retention of Defendants was necessary to maintain the debtor as a going concern." Memorandum of Decision, May 24, 2004, p. 8.

### Ordinary Course of Business

■ The Employment Committee states that this is an exceptional case where the ordinary course of business affirmative defense can be resolved by summary judgment. The Employment Committee argues that it is a clear fact that the bonus payments were extraordinary transactions and that summary judgment is appropriate. The Employment Committee points to several defendants' arguments in which they presented evidence that the bonuses were paid because of Enron's slide towards bankruptcy. The defendants explained that their annual performance bonuses were to be paid in early 2002; however, "[e]vents overtook" that bonus program which compelled Enron to accelerate the payments to the defendants with the defendants agreeing to stay with Enron until February 28, 2002, and to return the payment plus a twenty-five percent penalty if they left before that date. Opposition to Employee Committee's Motion for Partial Summary Judgment by Certain Current and Former UBS Employees, filed August 12, 2004, p. 6.

The Employment Committee cites the declaration of a member of Enron's Management Committee, Jeffrey Shankman,

who stated that the early payments of the performance bonuses for the year 2001 was an "effort to avoid the effects of Enron's bankruptcy filing." Declaration of Jeffrey Shankman, October 15, 2003, ¶ 5.

The Employment Committee also cites several cases where the court found that the ordinary course of business exception did not apply to retention payments made in connection with the termination of the debtor's operations or on the eve of a bankruptcy filing. The Employment Committee also provides comments from bankruptcy commentators that suggest that the payment of the bonuses was unusual.

The defendants argue that the Employment Committee relied on improper summary judgment evidence, failed to address the ordinary course defense with regard to each defendant and failed to prove that fact issues do not exist.

Furthermore, the defendants cite to cases that hold "[i]f the terms in question are ordinary for industry participants under financial distress, then that is ordinary for the industry." *In re Kaypro,* 218 F.3d 1070, 1074 (9th Cir.2000).

Whether a payment was made in the "ordinary course of business" is a fact issue and here the defendants have presented genuine issues of material fact as to whether such payments to the defendants were made in the ordinary course of Enron N.A.'s business.

### Order

Based on the foregoing,

**IT IS ORDERED** that the defendants' motions for summary judgment concerning the issue of a transfer of an interest of the debtor in property are DENIED. The transfers were of an interest of the debtor in property for the benefit of the defendants.

**IT IS FURTHER ORDERED** that the defendants' motions for summary judg-

ment concerning the issue of insolvency are **DENIED**, and the Official Employment–Related Issues Committee of Enron Corporation's motion for summary judgment on insolvency is **DENIED**. The presumption of insolvency has been rebutted. 11 U.S.C. § 547(f).

**IT IS FURTHER ORDERED** that the motion of the Official Employment–Related Issues Committee of Enron Corporation for partial summary judgment on its preference claims is **GRANTED IN PART AND DENIED IN PART**. The transfers were made within ninety days before the filing of the bankruptcy petition.